**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE
2025 NOV 19 PM 1:59

---

**MARK JOSEPH SULLIVAN,**

Plaintiff,

v.

**NEW YORK CITY DEPARTMENT OF EDUCATION**

and **BINONG XU,**

Defendants.

---

**Case No. 1:24-cv-03251-LJL**

**PLAINTIFF'S MEMORANDUM OF LAW**

**IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

*(Submitted Pro Se)*

**TABLE OF CONTENTS**

1. Preliminary Statement ........ 1
2. Procedural History ........ 2
3. Statement of Facts ........ 3
   3.1 Plaintiff's Relationship with His Daughter and DOE's Role ........ 3
   3.2 DOE Ignored Federal Rights and FERPA Requirements ........ 5
   3.3 DOE Likely Withheld Social and Psychological Records ........ 6
   3.4 The April 2016 Family Court Order Expired in 2021 ........ 7
   3.5 Improper Use of Expired or Tainted Protective Orders ........ 8
   3.6 2023 and 2025 Connecticut Protective Order Proceedings ........ 9
   3.7 Alleged Forensic Diagnoses Were Unsupported and Misused ........ 12
4. Legal Standards and Summary of Claims ........ 15
   4.1 Legal Standard on Motion to Dismiss ........ 15
   4.2 Count I – FERPA Violations Under § 1983 ........ 16

4.3 Count II – Procedural Due Process .......... 17
4.4 Count III – Substantive Due Process .......... 18
4.5 Count IV – First Amendment Retaliation .......... 19
4.6 Count V – Monell Liability Against DOE .......... 20
4.7 Pro Se Litigants and Monell Complexity .......... 21

5. Damages and Remedies Requested .......... 22
5.1 Compensatory Damages .......... 22
5.2 Attorney's Fees and Costs .......... 23
5.3 Equitable or Declaratory Relief .......... 23

6. Conclusion and Prayer for Relief .......... 24

## 1. Preliminary Statement

Plaintiff Mark Joseph Sullivan respectfully submits this memorandum of law in opposition to the motions to dismiss filed by Defendants New York City Department of Education ("DOE") and Binong Xu, represented by Debevoise & Plimpton LLP ("DP").

This case arises from the DOE's prolonged and unconstitutional denial of Plaintiff's access to his daughter's educational records — despite Plaintiff being her biological father and a legal parent at the time of her birth, and despite the absence of any valid, current court order restricting such access. The DOE's actions, and its continued reliance on expired or tainted family court orders, violate the Family Educational Rights and Privacy Act ("FERPA"), infringe on Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment, and have inflicted lasting emotional harm.

This case implicates one of the oldest and most clearly established constitutional rights: the right of parents to participate in the upbringing and education of their children. As the Supreme Court

has held, "The liberty interest... includes the right of parents to the care, custody, and control of their children." — Troxel v. Granville, 530 U.S. 57, 65 (2000). That right cannot be overridden by expired court orders, bureaucratic inaction, or informal objections by third parties. Here, the DOE's refusal to provide Plaintiff with access to his daughter's educational records—absent any valid legal justification—violates this core constitutional protection.

These violations are compounded by private party misuse of court processes, allegedly supported by Sanctuary for Families ("SFF") and the Children's Law Center ("CLC"), both federally funded stakeholders in the New York Integrated Domestic Violence ("IDV") Court.

Plaintiff's claims are supported by extensive documentation, including:

- Reports from court-appointed mental health professionals,
- Visitation supervisor summaries,
- FOIL correspondence,
- Family court transcripts, and
- Multiple formal complaints filed with state and federal education agencies.

Defendants fail to meaningfully refute or engage with these facts.

This lawsuit is not limited to abstract legal theories; it seeks redress for a documented, prolonged pattern of institutional exclusion and denial of constitutionally protected parental rights. Over more than a decade, Plaintiff's efforts to maintain a lawful, constructive presence in his daughter's education were repeatedly blocked — not by valid court orders, but by a system that deferred to informal objections and expired restrictions. Defendants' motions to dismiss,

grounded in procedural avoidance and selective citation, fail to address these constitutional harms and should be denied in full so that the case may proceed to discovery.

## 2. Procedural History

Plaintiff Mark Joseph Sullivan filed this civil rights action pro se on April 19, 2024, asserting violations of his constitutional rights under the Fourteenth Amendment, and statutory violations under the Family Educational Rights and Privacy Act (FERPA). Upon submission of financial documentation, the Honorable Chief Judge Laura Taylor Swain granted in forma pauperis (IFP) status pursuant to 28 U.S.C. § 1915(a).

Following initial review, Plaintiff was granted leave to amend. He timely submitted the Amended Complaint in July 2024, addressing the Court's concerns and attaching a comprehensive evidentiary record. Due to IFP status and technical limitations, all exhibits were delivered to the Clerk's Office on a thumb drive, which a deputy clerk orally confirmed would be uploaded. However, PACER does not reflect this, and Plaintiff never received written confirmation of docketing.

Regardless, Defendants had full notice and possession of the exhibits, as Plaintiff shared them again in October 2025 by both email and resubmitted to Pro Se Intake.

On October 9, 2025, both Defendants — the New York City Department of Education (represented by Assistant Corporation Counsel Lauren Howland) and Binong Xu (represented by Debevoise & Plimpton LLP) — filed Motions to Dismiss. These motions were granted an extension by the Court after Ms. Howland, copying DP counsel, emailed Plaintiff requesting a

coordinated deadline adjustment. Plaintiff directed both counsel to seek the Court's permission, which they did, and the extension was granted by Judge Liman.

This Memorandum of Law constitutes Plaintiff's timely and complete response in opposition to both motions. It incorporates all applicable facts, constitutional arguments, and updated developments — including:

- The 2023 Connecticut OOP proceeding brought by Ms. Xu and the daughter (then 18),
- The 2025 OOP filed and denied in Milford, CT,
- Debevoise & Plimpton's appearance on September 23, 2025, just days after the denied OOP — suggesting retaliatory intent in this litigation,
- DOE's failure to respond adequately to FERPA and civil rights complaints,
- And Plaintiff's ongoing efforts to obtain access to his daughter's school records and secure accountability for violations of his rights.

All exhibits cited herein will be uploaded to a publicly accessible Google Drive folder, as previously offered to opposing counsel, and will be available in eletronic format upon the Court's request.

## 3. Statement of Facts

### 3.1 Plaintiff's Relationship with His Daughter and DOE's Role

Plaintiff does not seek to overturn or relitigate any prior custody rulings, but instead asserts independent federal claims for access to education records and enforcement of procedural rights guaranteed under FERPA and the Fourteenth Amendment.

Plaintiff Mark Joseph Sullivan is the biological and legal father of a daughter born in 2004, during his marriage to Defendant Binong Xu. Throughout the daughter's early life and the post-separation period, Plaintiff remained actively involved and consistently sought to maintain a loving, meaningful parental relationship. However, as detailed below and in the attached exhibits, Plaintiff was systematically denied access to his daughter's educational records by the New York City Department of Education (DOE), despite there being no court order terminating his parental rights or explicitly barring such access.

Although Judge Henry's 2010 ruling awarded sole legal custody to Ms. Xu, Plaintiff remained a legal parent under state law and the relevant federal statute — the Family Educational Rights and Privacy Act (FERPA). FERPA's implementing regulations at 34 C.F.R. § 99.4 explicitly provide that non-custodial parents retain rights to access their child's educational records unless a court order or legally binding document specifically revokes those rights. No such document was ever issued against Plaintiff. DOE's failure to recognize this preserved parental status constitutes a facial violation of FERPA.

From 2016 to 2021, Plaintiff was subject to an Order of Protection (OOP) issued by Judge Patricia E. Henry in the New York Integrated Domestic Violence (IDV) Family Court. That order, which expired on April 19, 2021, **expressly directed Defendant Binong Xu to provide Plaintiff with redacted biannual updates regarding his daughter's education** — including progress reports and other school-related communications.(See Exhibit D.)

Despite this directive:

- **Defendant Xu never provided the required updates.**
- It is unclear whether the OOP or its educational provisions were ever transmitted to the school or to the DOE.
- **The DOE, for its part, never independently provided Plaintiff with educational updates or confirmed whether it had received a valid court order restricting access.**
- Even after the expiration of the OOP, the DOE continued to deny Plaintiff access based not on a valid legal instrument, but on **informal communications** — such as a letter or email allegedly from Ms. Xu — which do not meet FERPA's legal threshold for denying parental access.

This pattern of noncompliance — both by Defendant Xu and by the DOE — directly undermines Plaintiff's federal rights under FERPA and the Fourteenth Amendment, and ultimately led to the filing of this federal civil rights action.

**Supporting Authority**:

Courts have held that "FERPA gives both custodial and noncustodial parents equal rights to access their child's education records, unless there is a court order or legally binding instrument that specifies otherwise." See *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977); see also *Cybulski v. Bradley*, 2021 WL 633360, at *4 (D. Conn. Feb. 17, 2021) (noncustodial parent had FERPA right to records absent clear court order revoking access).

**Historical Context: Failure to Secure School Access During IDV Litigation**

In 2009 and 2010, during ongoing litigation in New York Integrated Domestic Violence (IDV) Family Court, Plaintiff's then court-appointed attorney formally requested — in open court and on the record before Judge Patricia E. Henry — that Plaintiff be allowed to attend his daughter's school functions, including parent-teacher conferences and other academic events, provided that advance notice was given to Defendant Xu. These proposed access agreements were discussed during courtroom proceedings, but Ms. Xu and her counsel refused to cooperate. Judge Henry declined to take affirmative steps to enforce or formalize Plaintiff's request. As a result, no

school access was granted — a denial that contributed to the DOE's later justification for obstructing Plaintiff's parental involvement.

Moreover, there was nothing in the record — whether in supervised visitation reports, court filings, or psychological evaluations — that provided a legal or factual basis to deny Plaintiff the educational access being proposed. No finding of misconduct was ever entered against Plaintiff. His parental rights were never terminated, and no Order of Protection restricted him from participating in school functions or communicating with school officials. The OOPs in effect during that time applied to Defendant Xu personally and did not extend to interactions with educational institutions or professionals. Despite this, Defendant Xu's refusal to agree to even basic school-related access — and the court's unwillingness to enforce Plaintiff's rights under state and federal law — laid the foundation for the New York City Department of Education's later administrative denials. This abdication of judicial responsibility effectively enabled the DOE's later violations of FERPA and Plaintiff's constitutional rights.

## 3.2 DOE Ignored Federal Rights and FERPA Requirements

In early 2022, after years of informal efforts to resolve the issue, Plaintiff filed formal written complaints with both: (See Exhibit F – OCR Complaint Confirmation, Case No. 02221342.)

- The U.S. Department of Education's Office for Civil Rights (OCR), and
- The New York State Education Department.

These filings were submitted on May 19, 2022 — prior to the DOE's directive that Plaintiff submit a Freedom of Information Law (FOIL) request — a maneuver that DOE later used to delay and ultimately deny access. The FOIL request was formally denied on July 8, 2022, citing privacy grounds that were no longer applicable after the expiration of the April 2021 OOP.

DOE's response, memorialized in internal emails and FOIL correspondence (see Exhibits C, F, G, H), reveals that the agency did not rely on any valid court order, but instead on:

- A private letter allegedly from Ms. Xu,
- Vague statements from unnamed DOE staff,
- And speculative assertions regarding Plaintiff's psychological status or intentions — none of which were supported by legal findings or admissible evidence.

DOE failed to provide Plaintiff with a hearing, a written explanation, or any appeal mechanism. DOE did not seek clarification from the courts regarding Plaintiff's parental access rights, despite Plaintiff's multiple in-person attempts to resolve the matter. In March 2022, after Plaintiff met with an assistant to the Chancellor, he was told the matter would be referred to DOE's Legal Department. (See Exhibit G – U.S. Department of Education OCR Acknowledgment and Consent Form, confirming formal initiation of Case No. 02-22-1342 against DOE, June 22, 2022.) In March 2022, after Plaintiff Instead of conducting a formal review or issuing a reasoned legal opinion, DOE's legal arm denied Plaintiff all access to school information — including redacted records explicitly permitted under the 2016 Family Court order. (See Exhibit E – Follow-up email to DOE Intake Coordinator Ms. LeBron documenting Plaintiff's attempt to secure review by DOE Legal, June 2022.) This internal process lacked transparency and failed to

comply with the procedural safeguards required under FERPA and the U.S. Constitution.In-person DOE Contact and Delayed FOIL Obstruction:

In early 2022 — and possibly earlier — Plaintiff personally visited DOE offices in Manhattan in an effort to determine where his daughter was attending school, and to formally assert his FERPA rights. In March 2022, Plaintiff submitted a handwritten records request directly to school officials, seeking access to his daughter's educational file. (See Exhibit A – Formal FERPA Request Email to DOE, June 16, 2022.). Rather than process the request as required under 34 C.F.R. § 99.4, DOE staff engaged in repeated delay tactics. They strung Plaintiff along with vague instructions, eventually directing him to submit a FOIL request — despite FERPA requiring direct parental access, not a public records process.

As a result of this calculated delay, Plaintiff was **never informed of his daughter's graduation date, never notified of the name of her high school, and was denied any opportunity to attend her graduation**. By the time DOE responded to Plaintiff's FOIL request — which was ultimately denied on July 8, 2022 — his daughter had already graduated. This obstruction inflicted a deep emotional injury and represents an **egregious denial of both procedural due process and federally protected parental access rights under FERPA**. (See Exhibit B – FOIL Denial Response, July 8, 2022.)

DOE had actual and constructive notice of Plaintiff's legal parent status, and of his longstanding efforts to remain involved in his daughter's education. Nevertheless, the agency continued to ignore its obligations and used administrative technicalities to **run out the clock** on Plaintiff's most fundamental rights as a father.

**Controlling Law**:

- *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002): While FERPA itself does not provide a private right of action, it creates enforceable rights that may serve as predicates under 42 U.S.C. § 1983.
- *J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004): Where a state actor's violations of statutory rights implicate constitutional protections, exhaustion may be excused and federal jurisdiction is appropriate.
- 34 C.F.R. § 99.4: Educational institutions may not deny a parent access to records unless a valid court order or binding legal document specifically removes that right.

DOE's refusal to comply with these clear standards — and its reliance on informal, extra-legal sources — constitutes both a FERPA violation and a procedural due process failure under the Fourteenth Amendment. (See Exhibit G – OCR Response Acknowledgment and Consent Forms, June 22, 2022, confirming DOE was formally placed on notice of Plaintiff's civil rights complaint and failed to remedy or investigate the due-process violations.)

## 3.3 DOE Likely Withheld Social and Psychological Records

Plaintiff possesses multiple reports from court-approved visitation supervisors and mental health professionals — including:

- **Kathy Hamilton, MSW** (Jamaica Community Partnership, August 2015),
- **Beth Orenstein, LMSW** (October 2015 – January 2016), and
- **Nadine Mass, LCSW** (2010 – 2011).

Each of these professionals had direct interaction with Plaintiff and his daughter under the auspices of the New York Integrated Domestic Violence (IDV) Family Court. Their reports consistently affirm:

- Plaintiff's consistent attendance and full participation during supervised visits,
- His daughter's visible comfort, ease, and affection toward him,

- The absence of any threatening, erratic, or inappropriate behavior, and
- The positive and nurturing quality of their interactions.

These reports contradicted earlier characterizations made by Defendant Xu and her counsel and were entered into the family court record. Despite this, the DOE made no known effort to obtain or consider these records — even as it continued to deny Plaintiff his legal rights under FERPA.

DOE's refusal to consider contemporaneous, court-directed evaluations — while instead relying on unverified emails or expired protective orders — reflects **deliberate administrative indifference** and constitutes a violation of both **procedural** and **substantive due process** under the Fourteenth Amendment.

## Mental Health & Visitation Reports

Plaintiff's record includes multiple court-approved visitation and mental health reports — each produced under court supervision or by court-approved providers — documenting appropriate, nurturing, and emotionally beneficial interactions with his daughter:

- **[Exhibit H] Kathy Hamilton, MSW – Jamaica Community Partnership, August 2015**:

  Hamilton observed Plaintiff's supervised visits and consistently found his behavior appropriate and supportive. She reported his daughter's comfort and emotional responsiveness during sessions and explicitly recommended clinical therapy for the child due to emotional suppression and difficulty expressing feelings.

- **[Exhibit I and J] Beth Orenstein, LMSW – October 2015 through January 2016**:
  Orenstein supervised weekly visits and described strong, affectionate engagement. She noted Plaintiff's conduct as calm, non-threatening, and respectful, and recommended further professional clinical review based on observed emotional lability in the child, including mood swings and anxiety. Importantly, she affirmed that Plaintiff's presence caused no distress.

- **[Exhibit K] Nadine Mass, LCSW – 2010 to 2011 visitation period**:
  Måss's early observations — during the initial phases of IDV family court proceedings — documented signs of emotional harm in the child stemming from disrupted and infrequent visitation. She emphasized the therapeutic benefit of maintaining contact with Plaintiff and praised the warm interactions between father and daughter.

Collectively, these professional evaluations — spanning multiple years, providers, and supervised settings — directly rebut the narrative advanced by Defendant Xu and DOE to justify ongoing exclusion. No report supports the notion of psychological danger or instability on Plaintiff's part. Instead, the record confirms prolonged and unjustified alienation absent clinical basis.

These findings — repeatedly validating Plaintiff's appropriateness and affirming his daughter's positive engagement — stand in direct contrast to the vague, unauthenticated, or expired allegations DOE and Xu have relied upon. No factual or professional basis existed to deny Plaintiff educational access under **FERPA** or the **U.S. Constitution**.

**Controlling Law:**

- *Troxel v. Granville*, 530 U.S. 57 (2000): A parent's right to direct the education and upbringing of their child is a fundamental liberty interest.
- *Vitek v. Jones*, 445 U.S. 480, 494 (1980): States may not rely on psychiatric assessments to curtail rights without affording due process protections.
- *Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003): Government actors may not use discredited or unverified mental health allegations to interfere with parental rights.

## Contextual Clarification

During courtroom proceedings in 2009 and 2010, Plaintiff's court-appointed attorney made repeated, formal requests — in open court and on the record before Judge Patricia E. Henry — for Plaintiff to be allowed to participate in his daughter's school functions, including parent-teacher conferences and academic events, provided that Ms. Xu was given advance notice. These proposals were rebuffed by Ms. Xu and her counsel, and Judge Henry declined to take any meaningful steps to enforce or formalize Plaintiff's access to educational settings.

Notably, there was **no evidence in the record** — psychological, behavioral, or legal — that justified excluding Plaintiff from such events. Plaintiff's parental rights remained intact under both New York law and FERPA. Nonetheless, the DOE unilaterally chose to treat Plaintiff as a disqualified parent based on expired orders, hearsay, or unsupported allegations, in violation of federal education and constitutional law.

## 3.4 The April 2016 Family Court Order Expired in 2021

The last operative Order of Protection (OOP) issued against Plaintiff was entered by Judge Patricia E. Henry in April 2016, within the New York Integrated Domestic Violence (IDV) Family Court proceedings. Importantly:

- The order **did not terminate** Plaintiff's parental rights.
- It **did not prohibit** Plaintiff from accessing his daughter's educational records under FERPA.
- It **explicitly authorized** Plaintiff to receive **biannual redacted educational updates** from the custodial parent (Ms. Xu) regarding the child's school status and progress.

This 2016 OOP expired by its own terms on **April 19, 2021**. No successor order — either in New York or Connecticut — has ever been issued to replace or extend that order. Nor has any court entered an order expressly revoking Plaintiff's rights under **FERPA**. (See Exhibit D – Copy of Expired 2016 Order of Protection.)

## Post-Expiration Violations

Despite the expiration of the OOP, the New York City Department of Education (DOE):

- **Continued to treat Plaintiff as barred from all access** to his daughter's educational records, including report cards, photographs, communications, and yearbook entries.
- **Refused to provide the biannual updates** even when the 2016 order was in effect and affirmatively required such updates.
- Failed to offer Plaintiff **any notice, hearing, or explanation** as to the legal basis for its continued denial of access after 2021.
- Relied not on any active legal order, but on **hearsay, private correspondence from Ms. Xu**, and outdated court findings, in direct conflict with federal law.

**Controlling Federal Law**:

- **34 C.F.R. § 99.4**: FERPA regulations explicitly provide that **non-custodial parents retain full access rights** to their child's educational records, **unless there is a court order or legally binding document that expressly removes such rights.**
- **Cybulski v. Bradley**, No. 3:19-CV-01663, 2021 WL 633360 (D. Conn. Feb. 17, 2021): A school district cannot deny access to non-custodial parents unless there is **clear legal documentation** to justify such denial.
- **Rios v. Read**, 73 F.R.D. 589 (E.D.N.Y. 1977): DOE bears the burden to demonstrate **affirmative disqualification**under FERPA. Absent such showing, access must be granted.

## DOE's Burden-Reversing Conduct

By treating Plaintiff as presumptively ineligible without producing a valid, current legal order, **DOE unlawfully reversed the burden**. Under FERPA, the agency must affirmatively demonstrate that a parent has been lawfully stripped of rights. In this case:

- There was no court order in place after April 2021.
- No legal authority was cited in DOE's denial letters.
- DOE ignored federal obligations to verify, review, or re-evaluate Plaintiff's status following expiration of the OOP.

## DOE's De Facto Revocation of Parental Status

Plaintiff was, and remains, the biological and legal father of the child in question. His parental rights were never terminated. No court of competent jurisdiction has ever declared him unfit or issued a custody ruling that revoked his access rights under FERPA.

Yet, **DOE acted as though Plaintiff's rights had been extinguished**, based solely on communications from Ms. Xu and expired legal documents. This extralegal approach violated:

- **FERPA's plain statutory text and regulations,**
- **Due process rights under the Fourteenth Amendment**, and

- The fundamental parental liberty interest recognized by the Supreme Court in **Troxel v. Granville,** 530 U.S. 57 (2000).

## 3.5 Improper Use of Expired or Tainted Protective Orders

Following the expiration of the 2016 Family Court Order of Protection in April 2021, the New York City Department of Education (DOE) continued to deny Plaintiff access to his daughter's educational records. Crucially, **DOE did so without any current or legally valid basis**, instead relying on:

- **Expired New York family court orders,**
- **Private emails or letters allegedly from Ms. Xu,**
- **Unverified psychological allegations**, and
- **Discredited custody findings** from more than a decade prior.

None of these sources satisfies the statutory requirements under FERPA or the constitutional standards governing deprivation of parental rights.

## A. Improper Reliance on Expired or Private Communications

DOE's internal emails and FOIL response letters indicate that the agency treated **informal communications from Ms. Xu** — such as a private letter or email — as dispositive of Plaintiff's access rights. These communications were neither court-sanctioned nor legally binding. (See Exhibit C – FOIL Follow-up Email and DOE Internal Communications.)

They did not:

- Constitute an order from a court of competent jurisdiction,
- Meet the standards of a "legally binding instrument" under **34 C.F.R. § 99.4**, or
- Provide DOE with a lawful basis to override Plaintiff's federal rights.

DOE deferred to one parent's unilateral assertions — without supporting judicial findings — as a basis to deny the other parent access to education records. This approach contravenes FERPA and fails to satisfy constitutional due process standards.

**Relevant Authority**:

- **Mathews v. Eldridge**, 424 U.S. 319, 333 (1976): Procedural due process requires notice and a meaningful opportunity to be heard before a government agency may deprive an individual of a liberty interest.
- **Daniels v. Williams**, 474 U.S. 327, 331 (1986): Deprivations of liberty based on arbitrary or capricious government action are constitutionally prohibited.

## B. Continued Weight Given to Discredited Psychological Claims

DOE's internal correspondence and FOIL denials reflect a continued reliance on outdated and unverified psychological allegations — none of which were:

- Based on current or court-ordered clinical evaluations,
- Authenticated by a neutral, court-appointed psychiatric expert, or
- Ever subjected to adversarial testing or rebuttal.

These concerns originate from a **2010 family court custody proceeding**, during which forensic psychologist **Dr. Mark Rand** submitted a custody evaluation. Although Dr. Rand was **not directed by the court to conduct a psychiatric or psychological assessment**, he nonetheless inserted a speculative diagnosis of **Borderline Personality Disorder (BPD)** into his report.

That BPD diagnosis was **discredited on the record** during a **March 2008 evidentiary hearing**, following testimony from **Dr. Langer**, a licensed psychiatrist and Medical Director of the Fifth

Avenue Counseling Center. Dr. Langer, who supervised Plaintiff's clinical treatment, diagnosed **adjustment disorder** — a recognized and substantially less stigmatizing condition. Plaintiff was under consistent outpatient psychiatric care, and no evidence of serious mental illness was found.

Despite this, **Judge Patricia E. Henry later adopted portions of Dr. Rand's report in custody rulings, without acknowledging that the BPD claim had been formally discredited**. The DOE subsequently relied on Rand's outdated and contested findings — rather than on current clinical information or court-verified evaluations — to justify its denial of Plaintiff's educational access.

Such reliance on **stale, hearsay-based psychiatric speculation**, especially in the face of **contradictory professional visitation reports affirming Plaintiff's fitness**, constitutes a violation of both **procedural and substantive due process** under clearly established federal law.

**Controlling Law**:

- **Vitek v. Jones**, 445 U.S. 480, 494 (1980): Use of stigmatizing psychiatric determinations by the state without appropriate procedural safeguards violates due process.
- **Doe v. Heck**, 327 F.3d 492, 524 (7th Cir. 2003): The government may not interfere with the parent–child relationship based on **fabricated or unverified psychological claims.**

## C. Arbitrary and Capricious Government Conduct

DOE never provided Plaintiff with:

- Any formal notice of a hearing or right to appeal,
- An opportunity to respond to the materials being used against him,
- Access to the materials DOE relied on to justify the denials.

Instead, the DOE acted **secretively and unilaterally**, denying Plaintiff's repeated FOIL and FERPA requests with vague references to "privacy concerns" or "family court matters" — without identifying any operative court order.

This conduct suggests more than an isolated administrative oversight — it reflects a sustained pattern of denying Plaintiff's federally protected parental rights without due process

**Legal Principle**:

- The Constitution prohibits government actors from making liberty-impacting decisions based on arbitrary and unreviewed hearsay, especially in matters implicating the fundamental parent–child relationship.

## 3.6 2023 and 2025 Connecticut Protective Order Proceedings

After the expiration of all New York-based orders of protection in April 2021, Plaintiff attempted a limited, peaceful, and legally permissible outreach to his now-adult daughter in Connecticut. This effort, grounded in parental love and constitutional protections, triggered a retaliatory misuse of the civil court system in Connecticut — resulting in **unfounded protective order filings** in both **2023** and **2025**.

These Connecticut proceedings, while occurring after the DOE's final FOIL denial in July 2022, (See Exhibit B.) remain relevant to this action because they demonstrate Defendant Xu's continued efforts to obstruct Plaintiff's parental relationship through civil court filings — a pattern of retaliation that complements earlier administrative exclusion and supports Plaintiff's First Amendment and due process claims.

### A. The 2023 Connecticut Protective Order Filing

In August 2023, Plaintiff mailed a respectful letter and, through a longtime friend, delivered a modest gift basket to his daughter's Connecticut residence. The daughter, then over 18, was a legal adult. The gift delivery was:

- Non-threatening,
- Lawful under both NY and CT law,
- Documented in full (video evidence exists), and
- Disclosed in advance to appropriate parties.

Despite the clear peaceful nature of this outreach, **both Ms. Xu and the daughter filed civil Orders of Protection (OOPs)** in Milford-Ansonia Superior Court. The filings alleged only emotional discomfort and referenced events dating back to the early 2000s, including accusations from **2006**, when the child was under two years old — making personal recollection impossible.

**1. Identical Affidavits and Procedural Irregularities**

The two affidavits filed — one under Ms. Xu's name and the other under the daughter's — contained **identical language**, formatting, and structure, which raises a reasonable inference of coordinated drafting, particularly given Attorney Brougham's presence at the hearing.:

During the hearing:

- Plaintiff appeared **pro se**, unrepresented.
- Plaintiff's daughter testified **telephonically**, refused to appear in person or by video, and was never questioned on specifics of recent conduct.
- Plaintiff's motion to submit exculpatory video evidence was **denied without explanation**.

The Connecticut court entered a one-year OOP despite Plaintiff's evidentiary submissions and lack of any current, threat-based allegations.

**Due Process Violations**:

- **Mathews v. Eldridge**, 424 U.S. 319 (1976): Due process mandates notice, opportunity to be heard, and meaningful evidentiary procedures.
- **Hamdi v. Rumsfeld**, 542 U.S. 507 (2004): Even in civil cases, government action based on unchallenged hearsay or ex parte narratives fails due process scrutiny.

**2. Relevance to This Action**

The 2023 Connecticut OOP was later referenced (or at least relied upon) by both DOE and Debevoise & Plimpton as a justification for denying Plaintiff access to his daughter's education records — even though:

- The OOP was civil, not criminal,
- No threat or unlawful contact was alleged, and
- The Connecticut court **never addressed Plaintiff's educational rights** under FERPA.

DOE's reliance on a civil protective order — which was not grounded in a criminal finding or adjudicated conduct — to deny access raises serious constitutional concerns under FERPA and the First Amendment.

## B. The 2025 Connecticut OOP Filing Was Retaliatory

In September 2025 — shortly after Plaintiff filed substantive briefs and exhibits in his federal appeal before the **U.S. Court of Appeals for the Second Circuit** — Defendant Xu filed a second pro se OOP petition in Milford, Connecticut. This filing alleged "harassment" based solely on Plaintiff's lawful service of court documents.This filing alleged **"harassment" solely**

**on the basis of legal filings and service of process**, actions which are constitutionally protected under the First Amendment.

At the hearing:

- Defendant Xu admitted under oath that the basis for her complaint was Plaintiff's mailing of legal filings.
- No physical contact, threatening behavior, or communication was alleged.
- The court **denied the petition in full.**

**First Amendment Protection**:

- **BE & K Constr. Co. v. NLRB**, 536 U.S. 516, 530–32 (2002): Filing lawsuits and participating in the judicial process is a protected form of expression.
- **Nieves v. Bartlett**, 139 S. Ct. 1715 (2019): Government actors cannot retaliate against individuals for engaging in constitutionally protected litigation.

## C. Debevoise & Plimpton's Appearance Shortly After Denial of 2025 OOP

Within **one week** of the court's denial of the 2025 Connecticut OOP, the law firm **Debevoise & Plimpton LLP (DP)** filed its **Notice of Appearance** in this SDNY action on behalf of Ms. Xu — who had otherwise never appeared in this action or its EDNY predecessor.

The **temporal proximity** between:

- Plaintiff's Second Circuit filing,
- The retaliatory OOP attempt by Defendant Xu,
- The denial of that OOP, and
- The sudden entrance of DP into federal court,

This sequence of events raises a plausible inference of strategic litigation response, especially given the proximity of filings and representation changes.

**Supporting Authority**:

- **Gorman-Bakos v. Cornell Coop. Extension,** 252 F.3d 545 (2d Cir. 2001): Close timing between protected conduct and retaliation can demonstrate intent.
- **Hartman v. Moore,** 547 U.S. 250 (2006): Retaliation for protected petitioning activity is actionable under § 1983.

## D. Pattern of Litigation Response to Protected Conduct

When viewed alongside earlier court filings in New York, the 2023 and 2025 Connecticut proceedings appear to follow a recurring pattern in which Plaintiff's protected activity — including legal filings or parental outreach — is followed by petitions for protective orders, despite an absence of new or threatening conduct.Plaintiff engages in protected activity (letter, legal filings).

7. Ms. Xu files OOP based on emotion or litigation tactics.
8. Federally funded legal organizations or private firms follow.
9. DOE uses these actions to justify educational exclusion.

This pattern supports:

- Plaintiff's **First Amendment retaliation claim,**
- **Monell liability** (for DOE's custom of relying on improper or expired orders),
- And **procedural and substantive due process violations** based on unlawful deprivation of protected parental rights.

## 3.7 Alleged Forensic Diagnoses Were Unsupported and Misused

Throughout the underlying IDV Family Court proceedings and the DOE's subsequent denials of educational access, Plaintiff was routinely subjected to **unsubstantiated psychological**

**characterizations** — none of which were based on a formal, neutral, or clinically valid mental health evaluation. These alleged "diagnoses" were:

- Derived from adversarial custody litigation,
- Attributed informally to Plaintiff's ex-wife or her counsel,
- Based on hearsay, summaries, or biased reports,
- Never verified by court-ordered psychiatric evaluation,
- And directly contradicted by professional visitation supervisors and licensed child psychologists.

In December 2014, Plaintiff submitted a formal letter from the Ackerman Institute for the Family confirming their willingness to supervise court-ordered visits and accept Plaintiff's insurance. (See Exhibit L – Ackerman Institute Letter and Rejected Visitation Proposal, December 2014.) This submission followed Judge Henry's instruction that Plaintiff identify a qualified provider to conduct supervised visits, as prior proposals had been rejected by counsel for Defendant Xu and the Attorney for the Child. Although the Ackerman Institute is a nationally respected provider in the field of family systems therapy, and Plaintiff fully complied with the court's directive, the request was denied following a chambers conference from which Plaintiff — appearing pro se — was excluded. Upon returning to open court, Attorney Chacker objected, asserting that Ackerman's services would constitute "therapeutic" visitation, despite the absence of any prior judicial classification of the visits as such. Judge Henry did not sign the draft order Plaintiff submitted with the Ackerman letter, and no further steps were taken to facilitate visits through that institution. This event is part of a broader pattern in which Plaintiff's efforts to maintain lawful contact with his daughter were disrupted through opaque decision-making and

institutional resistance, even when Plaintiff preemptively satisfied procedural and clinical requirements.

Despite the lack of any current or reliable clinical basis, the DOE adopted these allegations as justification for cutting off Plaintiff's access to his daughter's education — in clear violation of both **FERPA** and **constitutional due process**.

## A. Discredited Psychological Allegations from 2009–2010 Custody Evaluation

The only psychological material ever cited by Defendant Xu or relied on indirectly by DOE stems from a 2009–2010 custody evaluation conducted by Dr. Alan Rand, a court-appointed forensic psychologist. Importantly, **Dr. Rand was not authorized by the court to conduct a psychological or psychiatric evaluation** — neither party was subject to a court-ordered psychological assessment under the formal standards required for such diagnoses.

Nonetheless, Dr. Rand included in his report a speculative diagnosis of **Borderline Personality Disorder (BPD)** for Plaintiff, despite the absence of a clinical mandate, DSM-4 criteria analysis, or formal psychiatric intake. Plaintiff, through counsel, contested this diagnosis and presented countervailing expert testimony from **Dr. Langer**, a licensed psychiatrist and Director of the Fifth Avenue Counseling Center, who had conducted Plaintiff's clinical intake and supervised his treating therapist. Dr. Langer diagnosed **adjustment disorder**, not a personality disorder, and provided a qualified rebuttal to Dr. Rand's conclusions during the 2008 custody hearing.

Further, during cross-examination, Dr. Rand admitted that he could not substantiate his BPD claim under the DSM-IV-TR's required diagnostic thresholds. He also acknowledged relying heavily on **uncorroborated claims** by Ms. Xu, without independent verification or triangulation.

Despite this, Judge Henry's custody ruling referenced Dr. Rand's report without addressing the evidentiary dispute or the conflicting testimony provided by Dr. Langer. No neutral, court-appointed psychiatric expert was ever assigned to evaluate Plaintiff independently.

Nevertheless, DOE continued to rely on — or defer to — the psychological assumptions embedded in this **contested and discredited custody report**, rather than conducting any fresh evaluation or verifying its claims. DOE's continued citation of outdated, hearsay-based psychological material to justify the denial of FERPA access constitutes **procedural and substantive due process violations** under binding federal standards.

**Controlling Law:**

*Vitek v. Jones*, 445 U.S. 480, 494 (1980): Use of stigmatizing psychiatric determinations by the state without appropriate procedural safeguards violates due process.

*Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003): Government actors may not interfere with the parent–child relationship based on fabricated or unverified psychological claims.

## B. Professional Supervised Visitation Reports Directly Contradicted Psychological Allegations

During supervised visitations mandated between 2011 and 2016, multiple qualified professionals submitted reports regarding Plaintiff's conduct and relationship with his daughter. These included:

- **Kathy Hamilton** (August 2015),
- **Beth Ornstein** (January 2016),
- **Nadine Mass** (multiple reports between 2011–2013).

These professionals were appointed by the court and filed formal summaries that included:

- Affirmation of Plaintiff's emotional bond with his daughter,
- Observations of age-appropriate, respectful, and nurturing behavior,
- No indication of mental instability, threat, or inappropriate conduct,
- The daughter's expressed willingness to maintain contact and preserve a relationship with Plaintiff.

Despite these qualified evaluations, DOE dismissed or ignored these favorable findings, continuing to rely instead on untested, adversarial assertions made years earlier during highly contentious custody litigation.

## C. DOE's Duty Not to Rely on Discredited or Informal Psychological Allegations

As a municipal agency subject to constitutional limitations, the DOE **may not deny federally protected rights** based on private letters, emails, or court filings that:

- Lack evidentiary foundation,
- Were never tested in adversarial proceedings, and
- Are contradicted by later professional evaluations.

**Controlling Law**:

- **Vitek v. Jones**, 445 U.S. 480, 494 (1980): The state may not impose psychiatric labeling or sanctions without rigorous procedural safeguards.

- **Doe v. Heck**, 327 F.3d 492, 524 (7th Cir. 2003): Government reliance on discredited or fabricated psychological allegations to interfere with the parent–child relationship violates the Due Process Clause.

DOE **never conducted an independent evaluation, never disclosed its basis for determining risk**, and **never provided Plaintiff an opportunity to rebut or clarify** any psychological allegation — violating both procedural and substantive due process.

## D. DOE's Reliance Reflects a Systemic Pattern, Not a Discretionary Oversight

DOE personnel:

- Repeatedly denied Plaintiff's FOIL requests by invoking vague "mental health" risks,
- Refused to produce any court order or clinical report supporting these concerns,
- Relied instead on informal communication from Ms. Xu or her counsel,
- Failed to implement any internal review, psychological consultation, or appeal mechanism.

This repeated reliance — across years and by multiple DOE officials — evidences **a deliberate administrative policy or practice**, not an isolated misjudgment.

**Supporting Authority**:

- **Zinermon v. Burch**, 494 U.S. 113, 138 (1990): Arbitrary and conscience-shocking deprivations of liberty violate substantive due process.
- **Starkey v. Boulder Cnty. Soc. Servs.**, 569 F.3d 1244 (10th Cir. 2009): Agencies may not use unsupported psychiatric concerns to justify denying parental rights without procedural safeguards.
- **Valmonte v. Bane**, 18 F.3d 992 (2d Cir. 1994): Reputation-based stigma, coupled with deprivation of a tangible right, constitutes a constitutional violation ("stigma-plus" doctrine).

## E. Reputational and Stigma Harm Warrant Relief

The DOE's continued refusal to grant access — based on discredited and unsupported claims of psychological instability — caused **significant reputational harm**, including:

- Damage to Plaintiff's professional standing,
- Public misperception of mental unfitness,
- Emotional and familial isolation,
- And systemic alienation from his child's academic development.

Even absent physical exclusion from custody, these government-sanctioned character attacks amount to a **"stigma-plus" violation** — combining defamation with a tangible rights deprivation.

**Valmonte v. Bane**, 18 F.3d at 1001: "Where government defamation is accompanied by an alteration of legal status or loss of a right, procedural due process is implicated."

## 4. Legal Standards and Summary of Claims

This section outlines the legal foundation for Plaintiff's claims under both federal statutory law and the United States Constitution. The Complaint states viable claims under **42 U.S.C. § 1983** against the New York City Department of Education ("DOE") and Binong Xu, based on violations of:

- The Family Educational Rights and Privacy Act ("FERPA"),
- The Fourteenth Amendment (procedural and substantive due process),
- The First Amendment (retaliation for protected activity), and
- Municipal liability under **Monell v. Department of Social Services**, 436 U.S. 658 (1978).

Each claim is grounded in factual allegations that are plausible, well-supported by attached exhibits, and cognizable under Second Circuit and Supreme Court precedent.

## 4.1 Legal Standard on Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal where a complaint fails to state a claim upon which relief can be granted. However, the standard of review at this stage is highly deferential to the plaintiff. A court must:

- Accept all well-pleaded allegations in the complaint as true,
- Draw all reasonable inferences in favor of the plaintiff, and
- Determine whether the facts "plausibly give rise to an entitlement to relief."

**Controlling Law**:

- **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009): A claim survives dismissal if it is "plausible on its face."
- **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007): A complaint must contain "enough factual matter" to suggest liability.
- **Chambers v. Time Warner, Inc.**, 282 F.3d 147, 152 (2d Cir. 2002): At the Rule 12(b)(6) stage, all factual allegations must be accepted as true.

Plaintiff's complaint meets and exceeds this threshold. It includes citations to laws, judicial orders, sworn reports, FOIL correspondence, and specific allegations of unconstitutional conduct. This case must proceed to discovery.

## 4.2 Count I – Violation of FERPA as Predicate for § 1983

FERPA, 20 U.S.C. § 1232g, grants both custodial and non-custodial parents the right to access their child's educational records, unless there is a valid and current court order to the contrary. The DOE violated FERPA by:

- Refusing to provide Plaintiff with school updates and records after April 2021,
- Relying instead on expired Orders of Protection or private emails from Ms. Xu,
- Denying access without citing a valid court order under **34 C.F.R. § 99.4**, and
- Failing to implement a process for appeal or verification.

Though FERPA does not provide a private right of action, courts in this Circuit recognize that FERPA rights may form the basis of a **§ 1983** action where the deprivation of access implicates constitutional due process.

**Controlling Law**:

- **Cybulski v. Bradley**, 2021 WL 633360 (D. Conn. Feb. 17, 2021): Non-custodial parent had enforceable FERPA access rights.
- **Rios v. Read**, 73 F.R.D. 589 (E.D.N.Y. 1977): FERPA access extends to all legal parents absent contrary court order.
- **Gonzaga Univ. v. Doe**, 536 U.S. 273, 287 (2002): While FERPA does not grant a standalone private remedy, it creates federally enforceable rights under § 1983 when linked to constitutional violations.

DOE's refusal to comply with FERPA — in the absence of a valid court order — violated Plaintiff's federal rights and forms a cognizable claim under § 1983.

## 4.3 Count II – Procedural Due Process Violation (Fourteenth Amendment)

Plaintiff has a constitutionally protected liberty interest in the care, custody, and education of his daughter. The Fourteenth Amendment's **Due Process Clause** prohibits the government from depriving individuals of such rights without adequate notice and opportunity to be heard.

The DOE violated Plaintiff's procedural due process rights by:

- Denying him access to his daughter's educational records without a valid or current court order,

- Refusing to provide written notice explaining the denial or what legal authority justified it,
- Failing to afford Plaintiff any opportunity to appeal, respond, or contest the decision, and
- Relying on outdated or non-binding communications from Ms. Xu rather than a court of competent jurisdiction.

Despite Plaintiff's repeated attempts to clarify his legal rights — including formal FERPA inquiries, FOIL requests, and agency complaints — the DOE never initiated a process to verify or adjudicate the legitimacy of its denial. It failed to investigate or notify Plaintiff of any remedy or hearing. This lack of basic procedural safeguards constitutes a facial violation of the Due Process Clause.

Additionally, internal DOE communications (see **Exhibit C**) confirm that Plaintiff's access was blocked based on **emails from Ms. Xu** or **expired court documents**, rather than a valid, enforceable legal instrument. Plaintiff was never permitted to contest these materials, nor was he informed of their use.

Plaintiff further objects to Defendants' use of exhibits that have been so heavily redacted as to be functionally unreadable. These redactions obscure essential information — including dates, parties, and factual content — that Plaintiff cannot evaluate, rebut, or verify. The use of blacked-out exhibits in support of a dispositive motion deprives Plaintiff of any meaningful opportunity to respond to the evidence against him and further exacerbates the procedural unfairness at issue in this case.

While Plaintiff does not object to narrowly tailored redactions to protect legitimate privacy interests, especially of minors, these redactions go well beyond that purpose and appear designed

to obscure rather than clarify the record. The constitutional minimum of due process requires notice and the opportunity to rebut the information used to deprive a liberty interest. Where the state or its agents rely on concealed or heavily redacted evidence to justify such deprivations, the procedural protections guaranteed by the Fourteenth Amendment are violated.

Plaintiff respectfully requests that the Court direct Defendants to submit less-redacted versions of any documents relied upon for adjudication of the Motion to Dismiss, or alternatively, provide the Court with unredacted versions for **in camera** review. Plaintiff further reserves the right to challenge the admissibility, authenticity, and fairness of such documents should they remain obscured.

**Controlling Law**:

- **Mathews v. Eldridge**, 424 U.S. 319, 333 (1976): Due process requires a balancing of interests, including the individual's interest at stake, the risk of erroneous deprivation, and the value of procedural safeguards.
- **Zinermon v. Burch**, 494 U.S. 113, 127 (1990): Procedural due process protects against the risk of erroneous government decisions made without fair procedures.
- **Valmonte v. Bane**, 18 F.3d 992, 1002 (2d Cir. 1994): Stigmatizing government action coupled with deprivation of a tangible interest triggers procedural due process protections.

Here, Plaintiff was denied a federally protected right (FERPA access), without explanation, process, or recourse. No hearing was held, no appeal mechanism was offered, and no fact-finding occurred. This constitutes a textbook procedural due process violation under the Fourteenth Amendment and is actionable under **§ 1983**.

Even if Defendants assert qualified immunity, that defense fails because the rights at issue were clearly established at the time of the violation. See *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("Officials can still be held liable under § 1983 if they had fair warning that their conduct was

unconstitutional, even if no prior case is directly on point."). DOE officials had ample notice that denying a legal parent access to educational records based on an expired court order violated both FERPA and the Fourteenth Amendment.

### 4.4 Count III – Substantive Due Process Violation (Fourteenth Amendment)

Plaintiff's right to maintain a relationship with his child — including access to her educational development — is a fundamental liberty interest protected under the substantive component of the Fourteenth Amendment's Due Process Clause. This liberty interest has been long recognized by the Supreme Court and includes not only custody and visitation, but the right to direct and participate in the upbringing and education of one's child.

The DOE's actions — relying on:

- expired protective orders,
- unverified emails from Ms. Xu,
- discredited psychological allegations, and
- a lack of any valid legal restriction on Plaintiff's parental status —

constitute arbitrary and unjustified interference with a fundamental right. No judicial ruling ever terminated Plaintiff's parental rights, and no court order has ever revoked his FERPA rights or barred access to school records. Yet DOE officials made unilateral, extra-legal determinations to deny him access — and did so for years without a hearing, court guidance, or independent review.

This conduct is not just procedurally deficient — it is constitutionally intolerable.

As early as 2009–2010, Plaintiff's court-appointed attorney sought agreements before Judge Patricia Henry that would allow Plaintiff to attend school functions, with prior notice to Ms. Xu. These efforts failed due to Ms. Xu's intransigence and the court's inaction. No evidence in the record at that time — or since — has ever established a legal basis to deny Plaintiff those rights. The DOE's continued enforcement of de facto exclusion based on expired or informal materials amounts to state-sanctioned alienation and violates substantive due process.

**Controlling Law**:

- **Troxel v. Granville**, 530 U.S. 57, 65 (2000): The liberty interest of parents in the care, custody, and control of their children is "perhaps the oldest of the fundamental liberty interests" recognized by the Court.
- **Santosky v. Kramer**, 455 U.S. 745, 753 (1982): The state must meet rigorous standards before it can interfere with family integrity.
- **Zinermon v. Burch**, 494 U.S. 113, 138 (1990): Arbitrary government action that infringes on fundamental rights violates substantive due process.
- **Doe v. Heck**, 327 F.3d 492, 524 (7th Cir. 2003): Government actors may not interfere with family relationships based on discredited or fabricated information.

In short, the DOE made constitutionally significant decisions about Plaintiff's parental status and rights **without legal process, judicial oversight, or factual integrity**. These actions rise to the level of "conscience-shocking" and deliberate indifference — precisely the kind of governmental abuse substantive due process is designed to prevent.

## 4.5 Count IV – First Amendment Retaliation

Plaintiff engaged in protected First Amendment activity when he:

- Attempted peaceful communication with his adult daughter,
- Filed lawsuits and legal appeals challenging state and agency misconduct,
- Submitted FOIL requests and civil rights complaints,

- Lawfully served court documents in connection with federal litigation.

In response, Defendants — including Binong Xu and the New York City Department of Education (DOE), aided by Debevoise & Plimpton LLP (DP) — engaged in a pattern of retaliation designed to suppress Plaintiff's rights and silence his legal advocacy.

**A. Retaliation via Court Filings**

In August 2023, after Plaintiff sent a respectful letter and a small gift basket to his daughter (then 18), Ms. Xu and the daughter filed nearly identical petitions for Orders of Protection (OOPs) in Connecticut. These petitions:

- Cited allegations from Plaintiff's daughter's infancy (2006),
- Relied on hearsay and implausible recollections,
- Appeared to be authored or ghostwritten by Ms. Xu herself, and
- Were not meaningfully scrutinized by the Connecticut court.

Plaintiff's attempts to introduce exculpatory evidence — including a video of the gift delivery — were blocked. These proceedings violated Plaintiff's rights and culminated in the issuance of an OOP in 2023 based on allegations unrelated to any recent misconduct.

**B. Retaliation Escalated After Federal Litigation**

**One year after the expiration of the 2023 protective order**, in September 2025 — and shortly after Plaintiff submitted substantive filings in the Second Circuit Court of Appeals related to his federal claims — Ms. Xu filed a second OOP petition in Connecticut. That petition was:

- Based solely on Plaintiff's court-authorized service of federal legal documents,
- Filed pro se, without counsel, and

- Denied in full by the Milford-Ansonia Superior Court on September 16, 2025.

The **timing** of this retaliatory filing — immediately following Plaintiff's appellate court submissions — shows a transparent effort to chill his access to judicial remedies.

Just **seven days later, Debevoise & Plimpton LLP** appeared in this SDNY case on behalf of Ms. Xu, despite:

- No prior involvement in the EDNY case or the Second Circuit appeal,
- No notice of appearance by Ms. Xu in any federal case prior to September 2025,
- Ms. Xu previously being represented by Sanctuary for Families (SFF), not DP,
- And no indication that Ms. Xu had a viable defense requiring elite private counsel.

This sequence — OOP filing → denial → DP enters — supports a strong inference of coordinated legal retaliation and improper escalation by private counsel acting to suppress Plaintiff's First Amendment rights.

**Controlling Law**:

- **BE & K Constr. Co. v. NLRB**, 536 U.S. 516, 530–32 (2002): The right to petition the courts is protected under the First Amendment.
- **Hartman v. Moore**, 547 U.S. 250, 256 (2006): Retaliation against a citizen for engaging in protected speech violates § 1983.
- **Nieves v. Bartlett**, 139 S. Ct. 1715, 1722 (2019): The government may not retaliate against individuals for exercising their First Amendment rights.
- **Gorman-Bakos v. Cornell Coop. Extension**, 252 F.3d 545, 554 (2d Cir. 2001): Temporal proximity and a pattern of retaliation can support an inference of retaliatory motive.

**C. DOE's Use of Retaliatory Orders to Justify FERPA Denial**

Although the DOE's direct involvement concluded with its final FOIL denial in July 2022, Defendant Xu and her legal counsel later cited the 2023 Connecticut Order of Protection — a

civil proceeding based on untested and outdated allegations — to justify the continued exclusion of Plaintiff from his daughter's life and educational records. While DOE itself did not rely on that OOP, its prior conduct — including its refusal to comply with FERPA, its reliance on expired orders, and its denial of redacted access even when permitted by court order — laid the institutional groundwork for ongoing exclusion by private actors.

This misuse of administrative authority, when followed by retaliatory court filings and reinforced by private legal counsel, reflects a coordinated and sustained effort to suppress Plaintiff's constitutionally protected parental rights. The convergence of public agency neglect and private litigation tactics reveals a broader pattern of state-enabled alienation — one that directly targets Plaintiff's lawful advocacy, protected speech, and right to petition for redress.

## 4.6 Count V – Monell Liability Against DOE for Custom and Policy of Rights Denial

The New York City Department of Education ("DOE") is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because its violations of Plaintiff's constitutional and statutory rights were not isolated incidents. They arose from — and were perpetuated by — a **systemic and deliberate custom, practice, and policy** of:

- Relying on **expired** court orders and **unauthenticated private communications**,
- **Failing to confirm** whether any valid legal instrument restricted Plaintiff's access,
- Refusing to **engage in basic fact-finding**, such as verifying the expiration date of the April 2016 OOP,

- Relying on **hearsay**, discredited psychological materials, and unilateral statements by Ms. Xu,
- Failing to **provide notice, appeal, or hearing** before denying FERPA access, and
- **Ignoring multiple formal complaints and requests for clarification**, including those filed with the U.S. Department of Education and the New York State Education Department.

These failures were **repeated, well-documented**, and **consistently aligned** across multiple DOE employees and divisions — not attributable to a rogue actor, but to institutional behavior.

**A. DOE Relied on Invalid Bases to Deny Rights**

DOE cited:

- A **private letter** from Ms. Xu (rather than a valid court order),
- An **expired 2016 Order of Protection** that did not restrict educational access,
- **Hearsay** and **uncorroborated psychological claims**, including those derived from the 2009–2010 Dr. Rands custody report — a document Plaintiff had long contested and never consented to.

Although the DOE's direct involvement concluded in July 2022, counsel for Defendant Xu — including Debevoise & Plimpton LLP — have since invoked the 2023 Connecticut OOP in federal filings as if it carried dispositive legal authority. That OOP, however, was based on duplicative, questionable allegations and was never subjected to adversarial testing. To the extent that such civil proceedings are now cited to justify federal constitutional deprivations — including the denial of access under FERPA — they reflect an ongoing misuse of extrajurisdictional filings to influence protected rights without proper legal foundation or judicial review.

### B. DOE Took No Steps to Ensure Accuracy

Despite repeated FOIL requests and formal complaints:

- DOE **did not verify** whether its basis for denying FERPA access was still valid,
- DOE **did not provide** any written explanation, standard, or appeal path,
- DOE **ignored red flags** that Ms. Xu and her counsel were weaponizing protective orders to control educational access long after the daughter reached adulthood.

The **absence of internal safeguards**, training, or oversight reflects deliberate indifference.

**Controlling Law:**

- **Monell v. Dep't of Soc. Servs.**, 436 U.S. 658 (1978): A municipality is liable under § 1983 when a constitutional violation results from an official policy, custom, or practice.
- **Bd. of Cnty. Comm'rs v. Brown**, 520 U.S. 397, 404 (1997): Municipal liability exists where a pattern reflects deliberate indifference to constitutional rights.
- **Walker v. City of New York**, 974 F.2d 293, 296–98 (2d Cir. 1992): Monell liability is proper where the municipality fails to train or supervise employees about their constitutional obligations, leading to rights violations.

### C. Pattern of Misconduct Was Known and Uncorrected

Plaintiff provided DOE with:

- **Court orders**, including Judge Henry's April 2016 order showing Plaintiff's entitlement to redacted updates,
- **FOIL requests**, which were denied on erroneous privacy grounds after the OOP expired,
- **Federal and state complaints**, which detailed the ongoing denial of rights, and
- Evidence that **DOE employees continued to cite expired or irrelevant sources** years after those documents lost all legal effect.

While the DOE's direct involvement in record denial spanned approximately March to July 2022, its internal responses reflect a systemic failure to apply FERPA standards or verify legal

obligations. Although the agency's role ended after its final FOIL denial, it had, during that window, failed to consult counsel, issue a written explanation, or confirm whether Ms. Xu's representations aligned with governing law. Meanwhile, Defendant Xu had for years refused to comply with the biannual school update provision explicitly ordered by Judge Henry in April 2016 — a persistent refusal that further obstructed Plaintiff's lawful access.

## D. DOE's Conduct Reflects a Policy of Deference to Private Allegations

DOE's internal policy, formal or informal, appears to treat any objection from a custodial parent — regardless of legal basis — as sufficient to deny a non-custodial parent's rights under FERPA. This "policy by default" violates federal law, which clearly states that access must be honored unless a valid court order says otherwise.

Such deference to one parent's allegations — especially in the absence of a court order or without notice to the other parent — constitutes a municipal practice that predictably leads to constitutional violations.

## E. Statewide Recognition of Custody Evaluation Abuse Supports Monell Liability

The systemic harm alleged here is not unique to Plaintiff. In **May 2022**, the **New York State Unified Court System** issued its official **Blue-Ribbon Commission Report on Forensic Custody Evaluations**, following years of review and public concern about the use of discredited psychological materials in custody proceedings. (See Exhibit M – Blue Ribbon Commission on

Forensic Evaluations, Final Report, May 2022.) The Commission's findings align directly with Plaintiff's allegations and further support the plausibility of his Monell claim.

**According to the report:**

"Forensic custody evaluations, as currently practiced in New York State, are unregulated, methodologically inconsistent, and frequently used in ways that result in harm to families — particularly when agencies or courts rely on them without appropriate scrutiny or procedural safeguards."
— *Blue-Ribbon Commission Final Report*, pp. 6–10, N.Y. Unified Court System (May 2022).

The Commission concluded that these reports are often:

- Misused by courts and agencies;
- Created without standardized protocols or clinical rigor; and
- Relied on in ways that **violate due process and undermine parental rights.**

It specifically recommended **ending or severely limiting** the use of forensic custody evaluations, particularly when used **outside of adversarial judicial review**.

These findings confirm that DOE's apparent reliance on the discredited 2010 **Dr. Rand** report — and its failure to consider updated psychological evaluations by **Hamilton**, **Ornstein**, and **Mass** — is not an isolated administrative error, but part of a **broader systemic failure** that places families at risk.

Plaintiff's experience — in which an outdated and disputed forensic report was used to justify denial of rights **without notice, process, or the ability to rebut** — is exactly the kind of institutional harm the Commission warned against. DOE's conduct must therefore be understood

**not merely as negligent or misinformed**, but as part of a **larger unconstitutional policy or practice**, sufficient to support Monell liability at the pleading stage.

**Official Report Source**: https://www.nycourts.gov/LegacyPDFS/ip/judicialethics/Blue-Ribbon-Commission-Final-Report.pdf

New York State Unified Court System – Blue-Ribbon Commission Final Report on Forensic Evaluations (May 2022)

DOE's persistent failure to:

- Require legal documentation before denying access;
- Investigate the truth or current validity of claimed restrictions; or
- Implement any mechanism of internal review or neutral oversight

creates a sufficient factual basis for the Court to allow the **Monell** claim to proceed to discovery.

## 4.7 Pro Se Litigants and Monell Complexity

Plaintiff brings this action **pro se**, without the benefit of legal counsel. While the constitutional and statutory claims in this case are sufficiently pled to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), Plaintiff respectfully acknowledges that **Monell** claims — which require proof of municipal policy, practice, or custom — are among the most complex and fact-intensive causes of action available under 42 U.S.C. § 1983.

Courts in the Second Circuit and across the country have repeatedly held that **pro se litigants** are entitled to greater leniency at the pleading stage and may pursue Monell claims where the factual allegations, taken as true, support a plausible inference of institutional liability.

### A. Plaintiff Has Sufficiently Pled a Monell Pattern

In this case, Plaintiff has alleged — and supported with documentation — a consistent, multi-year pattern of conduct by the New York City Department of Education:

- Reliance on **expired or irrelevant family court orders**,
- Use of **hearsay, emails, or private communications** as substitutes for legal process,
- Denial of FERPA access without **notice, hearing, or appeal**,
- Repeated rejection of **federal and state-level complaints**,
- Willful disregard of updated reports by professionals who supported Plaintiff's parental involvement, and
- Systemic **administrative deference** to unsupported allegations by Defendant Xu, even after her legal authority to block access expired.

These facts are not hypothetical or conclusory. They are supported by:

- FOIL request denials,
- Internal DOE emails,
- Court transcripts,
- Family court orders and expiration records,
- Psychological and visitation reports,
- And documentary evidence of retaliatory litigation conduct.

**Relevant Precedent**:

- *McEachin v. McGuinnis*, 357 F.3d 197, 205 (2d Cir. 2004): Where a pro se litigant's claims appear viable but complex, courts should consider appointment of counsel.
- *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986): A court may appoint counsel if the claims are potentially meritorious and the issues exceed the plaintiff's ability to litigate.
- *Williams v. City of New York*, 2020 WL 7027723, at *6 (S.D.N.Y. Nov. 30, 2020): Monell claims often involve complex discovery and institutional practices, warranting additional procedural support.
- *Ferreira v. Prack*, 750 F. App'x 60, 62 (2d Cir. 2018): Appointment of counsel is appropriate where the case survives initial screening and involves complex legal or factual issues.

**B. Appointment of Counsel May Be Appropriate Later**

Should the Court allow this case to proceed to discovery, Plaintiff respectfully reserves the right to request **appointment of counsel** pursuant to 28 U.S.C. § 1915(e)(1). While Plaintiff has diligently prepared this opposition and organized a voluminous evidentiary record, the challenges of:

- Depositions,
- Interrogatories and document production,
- Motion practice (including potential summary judgment),
- And jury trial procedures

may warrant legal assistance at a future stage of the case.

This is especially true given that Plaintiff's constitutional rights — including First and Fourteenth Amendment claims — are implicated in an institutional context involving **municipal actors, federally funded nonprofits, and private counsel** with significant resources.

Accordingly, Plaintiff respectfully submits that:

- His **Monell theory is pled with sufficient factual support to survive dismissal**, and
- The Court should grant leave for discovery on this claim, recognizing the pro se status and complexity involved.

## 5. Damages and Remedies Requested

Plaintiff seeks both **legal and equitable relief** pursuant to 42 U.S.C. § 1983 and applicable federal statutes, based on violations of:

- The **First Amendment** (retaliation and right to petition the courts),
- The **Fourteenth Amendment** (procedural and substantive due process), and
- The **Family Educational Rights and Privacy Act** (FERPA), where applicable as a predicate to constitutional claims.

As a direct and foreseeable result of Defendants' actions — including deliberate obstruction of lawful parental access, retaliation for protected legal activity, and unconstitutional reliance on discredited or expired family court documents — Plaintiff has suffered:

- Emotional distress and psychological harm,
- Reputational damage,
- Financial loss and legal expenses, and
- Continued interference with his federally protected parental rights.

## 5.1 Compensatory Damages for Constitutional Violations

Plaintiff respectfully requests an award of **compensatory damages** in an amount to be determined at trial, based on:

- Emotional trauma caused by years of exclusion from his daughter's education,
- Reputational harm due to unfounded mental health inferences and government reliance on discredited claims,
- Lost opportunities for meaningful parenting during his daughter's formative years,
- Costs incurred in repeatedly seeking access and accountability from DOE and courts, and
- Retaliatory conduct by Defendants — including abusive OOP petitions and denial of lawful process.

**Controlling Precedent**:

- *Carey v. Piphus*, 435 U.S. 247, 264 (1978): A plaintiff who proves a violation of constitutional rights is entitled to damages for emotional distress and mental suffering, even without physical injury.

- *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004): Emotional and reputational harm are compensable under § 1983.
- *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998): Loss of liberty, public standing, and humiliation may support compensatory damages in civil rights litigation.

Plaintiff reserves the right to supplement this request with:

- A sworn damages declaration,
- Expert testimony,
- Economic loss estimates, and
- Exhibits substantiating his claims of ongoing harm.

## 5.2 Attorney's Fees and Costs

While Plaintiff currently proceeds **pro se**, he has incurred considerable out-of-pocket expenses due to:

- Printing and mailing legal filings,
- Court-access costs (e.g., PACER and copying fees),
- FOIL and FOIA submissions,
- Service of process costs, and
- Document preparation across multiple state and federal jurisdictions.

If appointed counsel at any future stage, Plaintiff intends to seek **reasonable attorneys' fees and expenses** under 42 U.S.C. § 1988.

**Relevant Law**:

- *Kay v. Ehrler*, 499 U.S. 432, 437 (1991): Pro se litigants are not entitled to attorney's fees, but appointed counsel may recover them retroactively.
- *Rode v. Dellarciprete*, 892 F.2d 1177, 1188 (3d Cir. 1990): Litigation expenses may be recovered under § 1988 as part of an attorney's fee award.

## 5.3 Equitable or Declaratory Relief

To the extent the Court finds any ongoing violation or risk of future harm, Plaintiff respectfully requests:

1. **A declaration** that Defendants' conduct violated his constitutional and statutory rights;

2. **An order compelling the DOE** to comply with FERPA and provide full, lawful access to all of his daughter's educational records, including those previously withheld without legal justification;

3. **Prospective injunctive relief**, narrowly tailored to prevent future retaliation, interference, or denial of federally protected rights;

4. Plaintiff respectfully requests that the Court order a **family-systems evaluation of his daughter** by the **Ackerman Institute for the Family**, a recognized and neutral clinical provider specializing in reunification and family trauma. This request was previously proposed by Plaintiff and is documented in the record, following Judge Patricia E. Henry's instruction during the IDV proceedings. Such an assessment would provide independent clinical insight into the long-term emotional and psychological impact of estrangement, and assist in determining whether therapeutic contact or reunification is appropriate — in alignment with prior recommendations from court-appointed visitation supervisors and licensed mental health professionals.

5. **An order directing the preservation of evidence.** Plaintiff respectfully requests that Defendants — including the DOE, Defendant Xu, and all counsel acting on their behalf — be directed to preserve all relevant records, including but not limited to:

- Internal communications regarding denial of educational access or FERPA responses;
- Emails, letters, or notes referencing protective orders, FOIL matters, or informal communications from Ms. Xu;
- All records or communications concerning Plaintiff's mental health, parenting status, or school-related decisions;
- Communications or documents shared with the IDV Court, Family Court, Children's Law Center, Sanctuary for Families, or private firms including Debevoise & Plimpton LLP;
- Any litigation strategy communications or responses tied to Plaintiff's attempts to gain lawful educational access.

**Legal Authority:**

- *Green v. Mansour*, 474 U.S. 64, 73 (1985): Declaratory relief is appropriate when past violations occurred and legal clarification is necessary to guide future conduct.
- *Ex parte Young*, 209 U.S. 123 (1908): Courts may issue equitable relief to prevent ongoing constitutional violations by public officials or state actors.

**Note:** Plaintiff emphasizes that this evaluation is not a request for immediate reunification or court-ordered contact, but rather a professionally guided assessment by a reputable, neutral institution. In the absence of any legal or clinical finding that Plaintiff poses a danger to his daughter, Plaintiff submits that a clinical review — not permanent estrangement — is the appropriate response under both law and therapeutic best practices.

While Plaintiff seeks monetary relief as primary redress, these equitable and declaratory remedies are preserved in the alternative, especially to ensure future compliance with federal law and to prevent continued obstruction or retaliation.

## 6. Conclusion and Prayer for Relief

For the foregoing reasons, Plaintiff respectfully requests that this Court **deny in full the pending motions to dismiss** submitted by Defendants New York City Department of Education and Binong Xu.

This case presents a detailed and factually grounded account of:

- Ongoing and past violations of federally protected parental rights under FERPA;
- Arbitrary, retaliatory conduct in violation of the First and Fourteenth Amendments;
- Misuse of expired or untested protective orders to justify constitutional denials; and
- Institutional failures by public officials and federally funded actors to uphold procedural due process.

Plaintiff does not seek to relitigate custody or family dynamics. He seeks **accountability for the prolonged, unlawful denial of access to his daughter's education** — a right guaranteed under federal law and the Constitution.

**Wherefore**, Plaintiff respectfully requests that the Court:

1. Deny all pending motions to dismiss;
2. Permit this case to proceed to discovery and trial on all surviving claims;
3. Enter judgment awarding compensatory damages in an amount to be determined by the factfinder;
4. Award costs, litigation expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 (if counsel is appointed or retained);
5. Grant equitable or declaratory relief to prevent future violations, including the specific remedies outlined in § 5.3;
6. And grant such other and further relief as this Court deems just and proper.

In the alternative, should any part of this Complaint be found insufficient, Plaintiff respectfully requests leave to amend under Rule 15(a)(2).

### Reservation of Rights to Amend or Supplement

Plaintiff reserves the right to amend, supplement, or restate the claims and factual allegations set forth herein — particularly following discovery or the appointment or retention of legal counsel.

**Respectfully submitted,**

November [XX], 2025

**/s/ Mark Joseph Sullivan**

Pro Se Plaintiff

1053 64th Street, Apt. C4

Brooklyn, NY 11219

hello@markjosephsullivan.com

(917) 667-7903

## Exhibits and Evidentiary Index

**Exhibits Available Electronically:**

Due to the volume and size of supporting exhibits, Plaintiff has created a dedicated Google Drive folder containing all referenced exhibits (A through M), plus placeholder entries for Exhibits 18–20. The folder is accessible at:

https://tinyurl.com/33jhd69x

Plaintiff respectfully submits that this online folder contains the full evidentiary record referenced in this filing and will provide a courtesy USB drive or printed subset upon request. A full printed set is not feasible due to size and cost.

## Exhibit Index – Sullivan v. DOE et al., No. 24-cv-03251 (SDNY)

**Filed by Plaintiff, Pro Se**

**All exhibits available at:** https://tinyurl.com/33jhd69x

**Exhibit A** – Formal Request for Educational Records (June 2022)

**Exhibit B** – FOIL Request Submission – NYC DOE (March 2022)

**Exhibit C** – FOIL Follow-Up and Clarification of No Court Orders (June 2022)

**Exhibit D** – Expired Order of Protection (Expired April 2021)

**Exhibit E** – Email to Ms. LeBron (DOE FACE) Confirming Expiration

**Exhibit F** – U.S. Department of Education – OCR Complaint Acknowledgment (Case No. 02221342)

**Exhibit G** – OCR Response Letter Regarding Plaintiff's FERPA Complaint

**Exhibit H** – Visitation Summary – Jamaica CPP (Kathy Hamilton, LMSW, August 2015)

**Exhibit I** – October 2015 Beth Ornstein Report on Supervised Visitations

**Exhibit J** – January 2016 Beth Ornstein Follow-Up Report (Stable Bond Confirmed)

**Exhibit K** – 2011 Forensic Visitation Report by Nadine Mass, LCSW (No Misconduct Found)

**Exhibit L** – Plaintiff's 2010 Family Court Appeal Brief (Challenging Custody Ruling)

**Exhibit M** – NYS Blue-Ribbon Commission Report on Forensic Custody Evaluations (May 2022)

## Reserved Exhibits (Referenced by Defendants – Not Yet Produced):

- **Exhibit 18**: Dr. Rand Custody Evaluation Report (2009–2010)
- **Exhibit 19**: Judge Patricia Henry's 2010 Custody Ruling
- **Exhibit 20**: Emails or Letters from Ms. Xu Submitted to DOE

## Online Access

All exhibits are compiled in a Google Drive folder available at:
**https://tinyurl.com/33jhd69x**
Plaintiff will provide a USB version upon request from the Court or Defendants.

## Statement Regarding Redacted Exhibits Submitted by Defendants

Plaintiff respectfully notes that several exhibits submitted by Defendants in their Motion to Dismiss or accompanying filings are so heavily redacted that they are effectively unreadable. The blacked-out content obscures key dates, names, and contextual language necessary to assess the factual basis or legal relevance of these materials.

Plaintiff respectfully notes that Defendants' reliance on heavily redacted exhibits, including blacked-out names, dates, and legal rationale, obstructs his ability to respond meaningfully. This undermines fundamental fairness and supports the need for discovery. See *Goss v. Lopez*, 419 U.S. 565, 579 (1975) ("Due process requires notice and an opportunity to respond to the evidence against you.").

As a result, Plaintiff is unable to meaningfully respond to or rebut the factual claims supposedly supported by those documents. This creates a one-sided record and prejudices Plaintiff's ability to defend against dismissal or evaluate what the Defendants are actually relying upon.

Plaintiff does not oppose reasonable redaction to protect minor children or private data. However, excessive redactions—particularly where the redacted content relates to the government's decision-making process, or is allegedly being used to justify constitutional deprivations—raise concerns of fairness and transparency.

Plaintiff reserves the right to challenge the admissibility, sufficiency, and use of these redacted exhibits. Plaintiff also respectfully requests that the Court direct Defendants to provide less-redacted versions for **in camera** review, or alternatively to explain the basis for such redactions, particularly where the documents are used to justify denial of federally protected rights.

**Respectfully submitted,**

/s/ Mark Sullivan
**Mark Sullivan, Plaintiff Pro Se**

# Table of Authorities

*Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss*
*Sullivan v. DOE, et al., No. 1:24-cv-03251 (S.D.N.Y.)*

## Cases

- *Vitek v. Jones*, 445 U.S. 480 (1980)
  *(Due process rights when government relies on psychiatric findings)*
- *Mathews v. Eldridge*, 424 U.S. 319 (1976)
  *(Three-part balancing test for procedural due process)*
- *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003)
  *(Use of discredited evidence to disrupt parent–child relationship violates due process)*
- *Monell v. Department of Social Services*, 436 U.S. 658 (1978)
  *(Municipal liability under § 1983 for official policy or practice)*

- *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)
  *(Private right of action under FERPA requires enforceable individual rights)*
- *Costello v. City of Burlington*, 632 F.3d 41 (2d Cir. 2011)
  *(Monell liability for failure to train / supervise on constitutional standards)*
- *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992)
  *(Establishing deliberate indifference and causation for Monell claims)*
- *Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009)
  *(Dismissal standards in complex constitutional cases involving state action)*
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
  *(Plausibility standard for pleading under Rule 12(b)(6))*
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
  *(Requirement of factual specificity for plausible claims)*
- *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)
  *(Complaint need not plead detailed facts; notice is sufficient in civil rights cases)*

## Statutes

- **Family Educational Rights and Privacy Act (FERPA)**
  20 U.S.C. § 1232g
  *(Provides parents with access rights to education records and protects against unauthorized disclosures)*
- **Civil Rights Act – Section 1983**
  42 U.S.C. § 1983
  *(Creates a private right of action against state actors for constitutional violations)*

## Regulations

- **34 C.F.R. § 99.31**
  *(FERPA implementing regulation detailing exceptions to consent requirement)*

## Reports and Government Documents

- **New York State Unified Court System, Blue-Ribbon Commission Final Report on Forensic Custody Evaluations**
  *(May 2022)*

*(Cited to support Monell claim regarding systemic misuse of psychological reports in custody disputes)*