USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/07/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK J. SULLIVAN,

Plaintiff,

-v-

CHANCELLOR DAVID C. BANKS, et al.,

Defendants.

24-cv-3251 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

The New York City Department of Education ("DOE") moves, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Amended Complaint ("AC") brought by Mark Sullivan ("Sullivan" or "Plaintiff"). Dkt. No. 61. Binong Xu ("Xu" and with DOE, "Defendants") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the AC and for an order enjoining Plaintiff from filing other suits in the Southern District of New York without leave of court. Dkt. No. 63.

For the following reasons, DOE's motion to dismiss is granted and Xu's motion is granted in part and denied in part.

## BACKGROUND

The well-pleaded factual allegations of the AC are accepted as true for the purposes of this motion. The Court also takes judicial notice of relevant orders issued in New York State Supreme Court for Kings County to establish the fact of such filings, but not for the truth of the matters asserted therein. *See* Dkt. Nos. 65-1–65-2; *see Scottsdale Ins. Co. v. McGrath*, 2024 WL 4512210, at *14 (S.D.N.Y. Oct. 17, 2024) ("The Court will take judicial notice of the actual filings in the above-captioned proceedings and statements therein . . . 'not for the truth of the

matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))); *Edwards v. Elmhurst Hosp. Ctr.*, 2013 WL 839535, at *2 n.5 (E.D.N.Y. Feb. 15, 2013) ("The Court may take judicial notice of orders issued by a state court" to establish the fact of such orders).

Plaintiff is a resident of Brooklyn, New York. Dkt. No. 15 ¶ Parties.1 ("Amended Complaint" or "AC"). Plaintiff is the biological father and noncustodial parent of Elizabeth Mei Xu Sullivan ("ES"). *Id.* Defendant DOE is a municipal agency. *Id.* ¶ Parties.3. Defendant Xu is the custodial parent of ES. See *id.* ¶ Parties.5; Dkt. No. 40 at 1.

Since April 2021, Plaintiff has sought access to ES's educational records from DOE. AC ¶ Parties.2. On March 4, 2022, Plaintiff formally requested access to his daughter's educational records under the federal Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. *Id.* ¶ B.1. Later that month, DOE legal representative Amy Basile ("Basile") informed Plaintiff that his access was denied due to an order of protection and in reliance on a letter from Xu. *Id.* ¶ A.4, B.1; *see also* Dkt. No. 40 ¶ III.10 (alleging that DOE relied on "unverified private letters and 'Notes' from Ms. Xu and affiliated actors"). In fact, the protective order expired in April 2021. AC ¶ B.3. Plaintiff alleges that DOE failed to verify the validity of legal documents before denying access to ES's records. *Id.* ¶ A.6.

On June 13, 2022, Plaintiff presented proof of the order's expiration in a meeting with the Office of the Chancellor of the DOE. *Id.* ¶ B.1. On June 16, 2022, Plaintiff met with a DOE representative who acknowledged that the order of protection had expired but cited it to continue denying him access to ES's records. *Id.* The next day, Plaintiff sent an email with proof that the order had expired in April 2021, again requesting access. *Id.* ¶ B.1, B.3. On June 24, 2022,

DOE required Plaintiff to make a request under the New York Freedom of Information Law ("FOIL"). *Id.* ¶ B.1.

Plaintiff states that DOE's denial of access was influenced by a letter written by Defendant Xu. *Id.* ¶ A.4. Plaintiff never received a copy of this letter. *Id.* Plaintiff alleges that despite full knowledge that the order of protection expired, Xu falsely represented to DOE that Plaintiff's access should still be restricted. *Id.* ¶ D.1. Plaintiff alleges that due to this misrepresentation he was prevented from attending his daughter's graduation, receiving any information about her education, and communicating with school staff about her well-being. *Id.* He asserts that his exclusion from his daughter's life has caused her severe emotional distress and developmental harm. *Id.* ¶ A.1. Alongside his complaint, he submitted visitation notes from 2011 which he alleges show that ES expressed affection towards him and desire for contact, fear of abandonment, and anxiety and internalized parental conflict. Dkt. No. 40 ¶ II.6; Dkt. No. 54-11.

Plaintiff filed a civil rights complaint with the U.S. Department of Education Office for Civil Rights ("OCR") regarding DOE's FERPA violations. AC ¶ B.2. OCR acknowledged Plaintiff's complaint on June 22, 2022, and scheduled an interview. *Id.* On July 14, 2022, OCR stated in a letter to Plaintiff that it could not assist with his complaint and referred him to the Family Policy Compliance Office ("FPCO"). *Id.*

Plaintiff alleges that his experience reflects a well-documented pattern of DOE violating the rights of noncustodial parents under FERPA. *Id.* ¶ C.3. Plaintiff alleges that the DOE legal representatives, including Basile and Natacha Beaufils, demonstrated ignorance of or disregard for FERPA's requirements. *Id.*

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on April 25, 2024. Dkt. No. 1. On October 8, 2024, Chief Judge Swain dismissed the complaint and granted Plaintiff leave to replead with facts supporting his claims under Section 1983. Dkt. No. 5. Plaintiff filed the Amended Complaint on February 5, 2025.[1] Dkt. No. 15. This matter was assigned to the undersigned on March 25, 2025. Minute Entry, Mar. 25, 2025. Plaintiff filed a supplemental complaint on August 4, 2025. Dkt. No. 40. Plaintiff filed corrected exhibits in support of his Amended Complaint, with leave of the Court, on September 15, 2025. Dkt. Nos. 54–55.

In his Amended Complaint, Plaintiff brings three claims against DOE: (1) violation of his rights under FERPA, 20 U.S.C. § 1232g; (2) violation of substantive and procedural due process under the Fourteenth Amendment; and (3) retaliation in violation of the First Amendment. AC at 15–17. Plaintiff brings these claims pursuant to 42 U.S.C. § 1983 under a theory of *Monell* liability. *Id.* Plaintiff also brings a claim of intentional infliction of emotional distress against Xu. *Id.* at 17.

DOE filed its motion to dismiss on October 9, 2025, with a supporting memorandum of law, the declaration of Lauren Howland, and exhibits. Dkt. Nos. 61, 64–65. Xu filed her motion to dismiss on October 9, 2025, with supporting memorandum of law and the declaration of Michael Schaper. Dkt. Nos. 67–70. Plaintiff filed a memorandum of law in opposition to the motions on November 19, 2025. Dkt. No. 74. Defendants each filed a reply memorandum of law in further support of their motion on December 19, 2025.[2] Dkt. Nos. 78–79.

[1] Plaintiff's Amended Complaint brought claims against Chancellor Aviles-Ramos and former Chancellor Banks in their official capacities. By Order of March 26, 2025, the Court construed the claims against Aviles-Ramos and Banks as claims against the DOE and dismissed Aviles-Ramos and Banks from the case. Dkt. No. 17.

[2] DOE filed a motion for leave to file excess pages in its reply. Dkt. No. 77. That motion is unopposed and granted.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)). Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

When adjudicating a motion to dismiss under Rule 12(b)(6), the Court considers not only the well-pleaded allegations of the complaint, but documents incorporated by reference and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *see Gray v. Wesco Aircraft Holdings, Inc.,* 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order). Specifically, the Court takes judicial notice of documents filed in New York State court "not for the truth of the matters asserted in the other litigation, but rather to establish the facts of such litigation and related filings." *Glob. Network Commc'ns, Inc.,* 458 F.3d at 157.

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abrams v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d. Cir. 2000). However, while the Court construes *pro se* pleadings liberally, *pro se* plaintiffs are not relieved of the requirement that they plead

enough facts so that their claims are plausible. *See Wee Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) ("[*P*]*ro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure.").

**DISCUSSION**

Defendants argue that the AC should be dismissed in its entirety for failure to state a claim for which relief can be granted. DOE additionally argues that Plaintiff's claims against it should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Dkt. No. 62 at 8.

**I. DOE's Motion Pursuant to Rule 12(b)(1)**

DOE raises two challenges to the Court's subject matter jurisdiction over Plaintiff's claims. DOE first argues that Plaintiff lacks standing to pursue his claims and second argues that the Court lacks subject matter jurisdiction due to Plaintiff's failure to exhaust his administrative remedies. Dkt. No. 62 at 7–11. The Court addresses each argument in turn.

Article III standing requires a plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Standing limitations ensure that the plaintiff has a "personal stake" in the case, as "a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 87 (2019) (Gorsuch, J., concurring)); *accord Ortiz v. Pace Univ.*, 761 F. Supp. 3d 695, 699–700 (S.D.N.Y. Jan. 7, 2025).

Importantly, "[t]he issue of standing is distinct from whether a plaintiff has a cause of action." *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 473 (S.D.N.Y. 2021); *see Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (collecting cases). "While the

pleading of a cause of action must possess enough heft to show that the pleader is entitled to relief, to plead standing, the pleader need only show that allowing her to raise her claim in federal court would not move so beyond the court's ken as to usurp the power of the political branches." *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 111 (2d Cir. 2018) (internal citation and quotation marks omitted). "Unless an allegation of injury is so insubstantial . . . as not to involve a federal controversy, the mere fact that it raises a federal question . . . confers power [on a federal court] to decide that it has no merit, as well as to decide that it has." *Id.* (internal citations and quotation marks omitted). The distinction between standing and the merits is important because a dismissal for lack of standing under Rule 12(b)(1) is without prejudice, while a dismissal for failure to state a claim under Rule 12(b)(6) is on the merits and may have preclusive effect. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed without prejudice."); *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006).

DOE argues that Plaintiff is not the custodial parent of ES and therefore lacks standing to bring any constitutional claims based on his liberty interest in the care, custody, and management of his child. Dkt. No. 62 at 8. Even assuming Plaintiff's status as a noncustodial parent deprives him of any cognizable liberty interest regarding ES, that does not deprive him of standing to bring a constitutional challenge to DOE's conduct. *See Bensinger v. Denbury Resources Inc.*, 2012 WL 4483811, at *3 n.4 (E.D.N.Y. Sept. 28, 2012) ("The mere fact that a plaintiff's claim is deficient on the merits does not mean that he lacks standing to bring it." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *Pessin v. JPMorgan Chase U.S. Benefits Executive*, 2025 WL 50014, at *4 n.4 ("A claim's legal insufficiency does not mean a plaintiff

lacks standing to bring it.”). Plaintiff does not bring a constitutional claim on behalf of his daughter; he asserts a concrete and particularized injury from DOE’s denial of access to his daughter’s education records and DOE’s retaliation against him for filing a complaint with OCR. *See* AC ¶¶ A.4–5. Regardless of the merits, “a federal court has power to hear such a case.” *See Ortiz*, 761 F. Supp. 3d at 700.

DOE next argues that because Plaintiff failed to exhaust his administrative remedies, the Court lacks subject matter jurisdiction. Dkt. No. 62 at 9. DOE argues that the appropriate procedural mechanism for Plaintiff’s claim was an Article 78 proceeding in New York state court to challenge DOE’s decision to deny access, rather than a complaint filed in federal court. *Id.* at 10. The availability of an Article 78 proceeding does not divest this Court of subject matter jurisdiction. *See Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (“Plaintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative remedies . . . exhaustion is necessary only where Congress specifically requires it, either explicitly or implicitly”); *Papay v. Haselhuhn*, 2010 WL 4140430, at *9 n.2 (S.D.N.Y Oct. 21, 2010) (plaintiff need not exhaust administrative remedies to bring substantive due process claim). That Plaintiff chose to bring a federal lawsuit rather than file an Article 78 petition does not divest this Court of jurisdiction. *See Acista v. City of New York*, 2004 WL 691270, at *4 (S.D.N.Y. Mar. 31, 2004) (“There simply is no authority for the proposition that this Court, as the forum in which plaintiff elected to bring his allegations of discrimination pursuant to § 1983, must abstain from exercising jurisdiction for plaintiff’s failure to first proceed in state court.”).

DOE’s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is denied.

## II. DOE’s Motion Pursuant to Rule 12(b)(6)

Plaintiff brings claims against DOE under Section 1983 for violation of his rights under FERPA, violation of substantive and procedural due process rights under the Fourteenth

Amendment, and First Amendment retaliation. AC at 15–16. DOE moves to dismiss each claim for failure to state a claim.

Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights independently secured by the "Constitution and laws." 42 U.S.C. § 1983. To successfully plead a Section 1983 claim, a plaintiff must allege two elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*; *accord Razzoli v. ASR Xpress*, 2026 WL 1492960, at *5 (S.D.N.Y. May 28, 2026); *Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *18 (S.D.N.Y. Mar. 29, 2024). Plaintiff brings his claims against DOE and therefore additionally must sufficiently allege municipal liability. *See Staboleski v. City of New York*, 2021 WL 796616, at *4 (S.D.N.Y. Mar. 1, 2021).

### A. Claims under FERPA

Plaintiff alleges that DOE violated his rights under the Family Educational Rights and Privacy Act of 1974 and brings a claim pursuant to 42 U.S.C. § 1983 to challenge this violation. AC ¶ A.1; *id.* at 15. DOE argues that FERPA does not provide a private right of action and Plaintiff's claim should therefore be dismissed. Dkt. No. 62 at 11.

Chief Judge Swain, then presiding, dismissed Plaintiff's initial claim under FERPA because FERPA itself does not provide a private cause of action. Dkt. No. 5 at 4; *see Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 785 (2d Cir. 2002) ("FERPA's record-access provisions, 20 U.S.C. § 1232g(b)(1), do not create an implied cause of action"), *abrogated on other grounds*, *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86 (2d Cir. 2024). In the Amended Complaint, Plaintiff reframes his claim of violation under FERPA as brought pursuant to Section

1983. AC at 15. Section 1983 does not itself create rights; it "provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) . "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286. In *Gonzaga*, the Supreme Court held that the nondisclosure provisions of FERPA, 20 U.S.C. § 1232g(b)(1), did not create an individual right enforceable under § 1983 because they "lack[ed] the sort of rights-creating language critical to showing the requisite congressional intent to create new rights" and "sp[oke] only in terms of institutional policy and practice, not individual instances of disclosure." *Id.* at 287 (internal citations and quotations omitted). The Court also noted that Congress created an institutional mechanism to enforce FERPA. *Id.* at 289–90. *Gonzaga* spoke directly only to Section 1232g(b)(1), and Plaintiff here invokes Section 1232g(a)(1), which provides that "funds shall not be made available . . . to any educational . . . institution which has a policy of denying" parents the educational records of their children. 20 U.S.C. § 1232g(a)(1). But the Second Circuit in *Taylor*, while recognizing that "the 'rights' language of § 1232g(a) is stronger than that used in § 1232g(b)," held that it was insufficiently unambiguous to confer an individual right enforceable under § 1983. 313 F.3d at 785–86. In other words, the conclusion that FERPA does not create an individual right precludes a Section 1983 claim alleging violation of a right under FERPA. The Second Circuit has squarely addressed this question and found that FERPA's record-access provisions, 20 U.S.C. § 1232g(a), which Plaintiff invokes here, "do not create a personal right enforceable under § 1983." *Taylor*, 313 F.3d at 786. The language of the statute addresses institutions' policies regarding record access and does not "create[] an unambiguously

conferred right" for individuals. *Id.* at 785 (quoting *Gonzaga*, 536 U.S. at 282) (emphasis omitted). Accordingly, Plaintiff cannot bring a claim for violation of FERPA, either directly through the statute or through a Section 1983 claim. *See Howard v. Andover Public Schools*, 2024 WL 1236244, at *2 (D. Mass. Mar. 5, 2024); *Wong v. State Dep't of Educ.*, 2018 WL 500642, at *8 (D. Conn. Jan. 22, 2018) .

Plaintiff's claims under FERPA are therefore dismissed with prejudice.

**B. Fourteenth Amendment Substantive and Procedural Due Process**

Plaintiff also challenges DOE's denial of access to education records as a violation of substantive and procedural due process under the Fourteenth Amendment. AC at 15–16. DOE argues that Plaintiff has failed to identify a constitutionally protected liberty interest in access to ES's records. Dkt. No. 62 at 13–16.

"Substantive due process rights safeguard persons 'against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999)). To establish a violation of substantive due process rights, a plaintiff must allege "(1) a deprivation of a protected interest, (2) that the government action was arbitrary and irrational, and (3) that the action was so egregious it shocks the conscience." *Morrow v. Satin*, 2026 WL 36232, at *2 (S.D.N.Y. Jan. 2, 2026) (citing *Southerland*, 680 F.3d at 151).

Plaintiff invokes parents' "long recognized . . . constitutionally protected liberty interest in the care, custody, and management of their children." *Southerland*, 680 F.3d at 152. Plaintiff asserts the interest in monitoring his daughter's education and well-being. AC ¶ A.3. The scope of a parent's liberty interest in the care, custody, and management of his children reflects parents' "substantive right under the Due Process Clause to remain together [with their children]

without the coercive interference of the awesome power of the state." *Hollenbeck v. Boivert*, 330 F. Supp. 2d 324, 333 (S.D.N.Y. 2004) (quoting *Tenenbaum*, 193 F.3d at 600). It thus protects against arbitrary and erroneous interference with parents' custody of their children. *See Kia P. v. McIntyre*, 235 F.3d 749, (2d Cir. 2000) (challenge to withholding of newborn infant analyzed under substantive due process); *Tenebaum*, 193 F.3d at 594 (challenge to removal of a child from school, absent parental consent, analyzed under substantive due process). It additionally confers upon parents a liberty interest in directing the upbringing and education of their children. *See Leebaert v. Harrington*, 332 F.3d 134, 140–41 (2d Cir. 2003); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 329 (E.D.N.Y. 2014) ("Foremost among the 'important decisions' protected by the Fourteenth Amendment right of privacy is the right of parents regarding the education of their children." (quoting *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977))); *see also Lehr v. Robertson*, 463 U.S. 248, 257 (1983) (noting "the 'liberty' of parents to control the education of their children" under the Constitution). That liberty interest is, however, limited. It includes the choice to send a student to a private or religious school, *Leebaert*, 332 F.3d at 140, but does not include a fundamental right to direct public school curriculum, *id.* at 141, or to exclude a student from a school's educational requirements, *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 462 (2d Cir. 1996).

Where a parent's custodial rights have been circumscribed by the state, his constitutional liberty interest with respect to the care and custody of his children is similarly circumscribed. *See Lamont v. Farucci*, 2017 WL 6502239, at *12 (S.D.N.Y. Dec. 18, 2017) (a parent's custodial rights under New York law "implicate[] the strength of [p]laintiff's liberty interest in making decisions regarding [child's] education"); *Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996) ("[Plaintiff's] liberty interest in the care, custody, and management of his son has been

substantially reduced by the terms of the divorce decree and Nebraska law."); *Brittain v. Hansen*, 451 F.3d 982, 989 (9th Cir. 2006) (liberty interest of "non-custodial parents with court-ordered visitation rights . . . is unambiguously lesser in magnitude than that of a parent with full legal custody" and becomes "substantially reduced by the terms of the state court custody judgment" (internal quotation marks and citation omitted)). Xu and not Plaintiff was given custody over their daughter. A parent whose right of custody and control over their children has been reduced (or removed) by the state no longer has an equivalent liberty interest in that custody or control. *See, e.g., Langton v. Maloney*, 527 F. Supp. 538, 550 (D. Conn. 1981) (father who had not had legal custody of child since divorce over a decade earlier could not challenge as unconstitutionally infringing his liberty interest the state's later order granting custody of child to the state). In other words, while a parent with legal custody over a child can challenge unconstitutional interference with that custody, a parent who, by virtue of state order, no longer has custody over a child cannot raise a similar constitutional challenge to interference with that custody. *Compare Murphy v. Rockland County*, 2025 WL 2689039, at *10 (S.D.N.Y. Sept. 18, 2025) (assessing constitutional challenge to removal of children from plaintiff's custody during her arrest) *with Fuentes v. N.Y.C. Dep't of Educ.*, 2012 WL 1078779, at *3 (E.D.N.Y. Mar. 30, 2012) (noncustodial parent does not have a constitutionally protected liberty interest in participating in child's education through the procedures provided under the IDEA).

DOE argues that because Plaintiff is a noncustodial parent, he has no protected interest in the care and custody of ES. Dkt. No. 62 at 14; *see* AC ¶ A.1 (Plaintiff asserting his rights as noncustodial parent). Plaintiff asserts that his status as a noncustodial parent should not preclude him from attending ES's graduation and remaining informed of her well-being. AC ¶¶ A.3, D.1. The custody order issued by New York Supreme Court, however, granted exclusive custody to

Xu and not to Plaintiff. Dkt. No. 65-1. It was silent as to Plaintiff's right to control education decisions. *Id.* Under New York law, Plaintiff therefore has no right to "control" decisions with respect to ES's education. *See Fuentes v. N.Y.C. Bd. of Educ.*, 907 N.E.2d 696, 699 (N.Y. 2009) (where the custodial parent is granted exclusive custody and the divorce decree and custody order are silent as to the right to control education decisions, non-custodial parent has no right to control such decisions). He consequently has no constitutionally protected liberty interest in such control over ES's education and upbringing.[3] As relevant to Plaintiff's allegations and desire to remain apprised of ES's educational accomplishments, under New York law, a non-custodial parent does retain the right to "participate" in the child's education. *See id.* ("[T]here is nothing which prevents a noncustodial parent . . . from requesting information about, keeping apprised of, or otherwise remaining interested in the child's educational progress. Such parental involvement is to be encouraged.").

That Plaintiff may retain the right to participate in ES's education under New York law does not mean that he has a constitutionally protected liberty interest in such participation, absent any interest in directing ES's upbringing and education.[4] *See Fuentes v. N.Y.C. Dep't of Educ.*,

---

[3] To the extent Plaintiff challenges the state court judgment granting Xu exclusive custody, under the *Rooker-Feldman* doctrine, the Court does not have jurisdiction to review that judgment. *See Gorrie-President v. A.D.*, 2025 WL 2998038, at *6 n.7 (S.D.N.Y. Oct. 24, 2025) (under *Rooker-Feldman*, "this Court may not overturn any final state court judgment awarding custody of A.D."); *Sticesen v. Fay*, 783 F. App'x 26, 28 (2d Cir. 2019) (summary order) (*Rooker-Feldman* barred district court review of family court judgments); *see also T.M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739 (2026) (expanding application of *Rooker-Feldman* doctrine to non-final state court judgments).

[4] Plaintiff's right to participate was also circumscribed by a 2014 order from the Kings County Supreme Court which ordered that ES's "school records or any other information regarding [ES's] address may not be released to [Plaintiff] except as further provided by this court." Dkt. No. 64-2. The order states it "shall remain in effect until further Court order." *Id.* The AC alleges that there were no orders blocking his access to ES's records. AC ¶ A.1. Though this order could provide another ground for dismissing Plaintiff's claim, whether or not this order remained in effect at the time of DOE's actions is ultimately immaterial to this motion.

2012 WL 1078779, at *3 (E.D.N.Y. Mar. 30, 2012) (noncustodial parent's inability under New York law to "review and challenge" the education provided to his child "[p]lainly" did "not rise to the level of a substantive due process violation"); *see id.* (noncustodial parent "possesses no constitutional entitlement to participate in the procedures afforded to custodial parents under [the IDEA]"); *Crowley v. McKinney,* 400 F.3d 965, 968 (7th Cir. 2005) (finding that "we greatly doubt that a non-custodial divorced parent has a federal constitutional right to participate in his child's education at the level of detail claimed by the plaintiff," namely the right to receive documents from school, serve as playground monitor, and attend school book fair). A parent's protected liberty interest in the child's education stems from the interest in directing the child's upbringing. *See Leebaert*, 332 F.3d at 142. Absent any interest in directing a child's upbringing, there is no fundamental right to information about a child's education. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (listing fundamental rights protected by due process and stating that "we have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended" (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992))); *see also Cherry v. LeDeoni*, 2002 WL 519717, at *7 (E.D.N.Y. Mar. 31, 2002) (refusal to provide incarcerated parent with information concerning son's school and teacher "simply does not amount to a constitutional violation of the right to control the upbringing of one's child."). Plaintiff has identified no constitutionally protected liberty interest in access to ES's school records.

Even if Plaintiff had a protected liberty interest in the school records, his allegations do not "demonstrate that the state action depriving him of [access] was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir.

2011) (quoting *Tenenbaum*, 193 F.3d at 600). Plaintiff alleges that, in reliance on a letter from Xu and an expired order of protection, DOE denied his request for ES's educational records. Plaintiff alleges that Xu's letter represented to DOE that Plaintiff's access to ES's records should be restricted despite the expiration of the protective order and misrepresented Plaintiff's legal status as to ES. AC ¶ D.2. It was not arbitrary or egregious for DOE to deny Plaintiff access to ES's records based on these alleged representations. At most, Plaintiff's allegations that DOE failed to verify the representations prior to denying access alleges common negligence, which "is categorically insufficient to shock the conscience." *Cox*, 654 F.3d at 276; *see also id.* (report to child services that could be characterized as exaggerated or even negligent was not "even remotely 'outrageous' or 'conscious-shocking'"); *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 381 (S.D.N.Y. 2012) (defendants' conduct in investigating abuse based on report that misrepresented parents' conduct was at most "negligent" and did not shock the conscience).

Plaintiff's claim under Section 1983 of a substantive due process violation is thus dismissed for failure to allege a constitutionally protected liberty interest and for failure to allege that DOE's actions were arbitrary and egregious.

Plaintiff also asserts that DOE violated his procedural due process rights because he was denied access to ES's records without being able to view the materials relied upon and without receiving a post-deprivation hearing. As a threshold matter, Plaintiff's failure to identify a constitutionally protected liberty interest or property interest forecloses this claim.[5] *See Fuentes*,

[5] Plaintiff does not have a property interest in the records requested under FERPA. "To have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). As noted above, FERPA does not create an individual right of access to educational records. *See Taylor*, 313 F.3d at 786. Plaintiff therefore has no claim of entitlement to records pursuant to FERPA, and no constitutionally protected property interest in those records. *See Rivera v. Cnty. Sch. Dist. Nine*, 145 F. Supp. 2d 302, 306 (S.D.N.Y. 2001)

2012 WL 1078779, at *6 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972))). Moreover, even assuming Plaintiff asserted a constitutionally protected interest, Plaintiff cannot "plausibly claim the deprivation of a protected interest without due process of law because an adequate post-deprivation remedy in the form of an Article 78 proceeding was available under state law." *Attallah v. N.Y. Coll. of Osteopathic Med.*, 643 F. App'x 7 (2d Cir. 2016) (summary order); *see Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (alleged state deprivation of property does not violate procedural due process 'if a meaningful postdeprivation remedy for the loss is available"); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here is no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty."); *see id.* at 881 ("[A]n Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit."). Plaintiff could have challenged DOE's decision not to provide ES's educational records through an Article 78 proceeding. *Concourse Rehab. & Nursing Ctr., Inc. v. Shah*, 78 N.Y.S.3d 60, 61 (1st Dep't 2018) ("The proper vehicle for challenging a governmental agency's determination or action is via an article 78 proceeding"); *Nelson v. Thomson*, 2026 WL 852234, at *2 (2d Cir. Mar. 27, 2026) (summary order) ("An Article 78 proceeding may be brought by any person to 'challeng[e] the activities of an administrative agency in court, and enables the 'speedy correction of improper action by a 'body or officer.'" (first quoting *Whitfield v. City of*

("[A] plaintiff must have 'more than an abstract need or desire for [the property], she must, instead, have a legitimate claim of entitlement to it under state or federal law . . . ." (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996))).

*New York*, 96 F.4th 504, 519 (2d Cir. 2024); and then quoting *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986))). Plaintiff's claim of a procedural due process violation is therefore dismissed.

### C. First Amendment Retaliation

Plaintiff alleges that DOE unlawfully retaliated against him for filing a complaint with the OCR by continuing to deny Plaintiff access to educational records under FERPA and imposing a requirement for Plaintiff to file a request under New York's Freedom of Information Law ("FOIL"). AC at 8. DOE argues that Plaintiff has failed to allege any element of a First Amendment retaliation claim. Dkt. No. 62 at 18–19.

To state a prima facie case for First Amendment retaliation, a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the protected speech caused defendant to take adverse action against the plaintiff, and (3) that the adverse action caused plaintiff injury. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022). "[A]s a general matter the First Amendment prohibits government officials from subjecting individuals to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391 (2019) (internal citations omitted). A plaintiff may state a First Amendment claim where a government official takes "adverse action against someone based on that forbidden motive and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Id.* (internal citations omitted). A plaintiff must also establish a but for causal connection between the government's retaliatory animus and the plaintiff's subsequent injury. *Id.* at 398–99; *see also Nat. Rifle Assoc. of Am. v. Vullo*, 602 U.S. 175, 203 (2024) (Jackson, J., concurring). In other words, "a plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been

taken absent the retaliatory motive.'" *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (quoting *Nieves*, 587 U.S. at 399).

Plaintiff has alleged that he engaged in protected First Amendment activity by filing a complaint against DOE to OCR. Filing a complaint regarding state conduct to a government agency is a protected activity under the First Amendment. *See Hernaiz v. Carlson*, 2024 WL 2089355, at *4 (D. Conn. May 9, 2024) (filing citizen's complaint against a police officer is protected activity); *Tirado v. Shutt*, 2015 WL 4476027, at *4 (S.D.N.Y. July 22, 2015) ("The First Amendment's freedom of speech protection extends to complaints filed by inmates against prison officials."); *Hanner v. Westchester County*, 2017 WL 6352261, at *5 (S.D.N.Y. Dec. 11, 2017) ("The filing of a grievance and lawsuit is considered speech protected under the First Amendment.").

Plaintiff has not, however, plausibly alleged that DOE's actions were "motivated or substantially caused by" his complaint or that DOE's actions caused him injury. *Dorsett*, 732 F.3d at 160. A plaintiff must allege "a causal connection . . . sufficient to warrant the inference that the protected speech was a substantial motivating factor" in the adverse action. *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 541 (S.D.N.Y. 2014) (quoting *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994)). While temporal proximity can provide an inference of causal connection, "protected activity must precede any purported retaliation to state a First Amendment retaliation claim." *Id.* at 542 (citing *Parkash v. Town of Southeast*, 2011 WL 5142669, at *7 (S.D.N.Y. Sept. 30, 2011), *aff'd*, 468 F. App'x 80 (2d Cir. 2012) (summary order)).

DOE's action in "not granting access under FERPA," AC at 8, cannot support a claim of retaliation, as it was a continuation of action—the denial of records—that preceded Plaintiff's

protected activity. Plaintiff does not allege when he filed his OCR complaint, but his allegations show that, regardless of the precise date it was filed, it followed the denial of Plaintiff's request for records under FERPA. In an email dated June 16, 2022, Plaintiff informed DOE that he filed a civil rights complaint which was "based upon" Basile's response to his in-person visit to DOE in March 2022, when he first requested access to ES's educational records. Dkt. No. 54-5. That Plaintiff's OCR complaint was based on Basile's original denial of his FERPA request necessarily implies that the OCR complaint followed the denial of his request. *See also* AC ¶ B.1 (alleging that Plaintiff first requested ES's records on March 4, 2022 and that OCR acknowledged the filing of his complaint on June 22, 2022). The AC thus alleges that Plaintiff's request for records under FERPA was denied, Plaintiff filed an OCR complaint protesting the denial, and DOE did not alter its decision to deny Plaintiff's request. That sequence does not support a claim of First Amendment retaliation. *See Santucci v. Levine*, 2021 WL 76337, at *7 (S.D.N.Y. Jan. 8, 2021) ("The sequence of a First Amendment retaliation claim is straightforward . . . [a]t the most basic level, defendants' retaliatory actions must occur later in time than plaintiffs' protected speech." (internal quotation marks and citation omitted)); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 541–42 (S.D.N.Y. 2014).

Plaintiff's allegation that a FOIL requirement was "only imposed" after Plaintiff "escalated his complaints," AC at 8, also cannot support a claim of retaliation. Though this "requirement" was temporally proximate to Plaintiff's protected activity, it does not constitute an adverse action. To allege an adverse action, plaintiff must show "either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Mangino v. Incorporated Village of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015) (cleaned up). A requirement for Plaintiff to file a FOIL request imposed no injury on Plaintiff.

The requirement cannot be construed as an additional burden imposed on Plaintiff in response to protected activity; DOE did not condition Plaintiff's requested relief, records pursuant to FERPA, on his filing a FOIL request. Rather, a FOIL request presented a new avenue for requesting documents after DOE determined that requesting records through FERPA was not available to Plaintiff. DOE's instruction to file a FOIL request could not plausibly be construed as chilling Plaintiff's speech or creating concrete harm. *Cf. Denicolo v. Bd. of Educ. of City of N.Y.*, 328 F. Supp. 3d 204, 213 (S.D.N.Y. 2014) ("deluge of reprimand letters and negative evaluations" after plaintiff declined to mediate OCR claim constituted adverse actions).

To the extent Plaintiff premises his claim of retaliation on OCR referring Plaintiff to the Family Policy Compliance Office ("FPCO"), AC at 9, that referral cannot support a claim of retaliation. The FPCO was established by the Secretary of Education "to act as the Review Board" and "permits students and parents who suspect a violation of [FERPA] to file individual written complaints." *Gonzaga*, 536 U.S. at 289 (2002) (citing 34 C.F.R. §§ 99.60, 99.63). It did not constitute an adverse action for OCR to refer Plaintiff to the proper office for his complaint.

DOE's motion to dismiss Plaintiff's claim of First Amendment Retaliation is granted.

**D. Municipal Liability**

Plaintiff brings his Section 1983 claims against DOE and alleges municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). DOE argues that it cannot be held liable because Plaintiff has failed to allege either a constitutional violation or that DOE had a policy, custom or practice that contributed to the denial of his request. Dkt. No. 62 at 20.

To plead Section 1983 claims against a municipality, a plaintiff must allege: "(1) actions taken under color of law; (2) deprivations of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see Monell*, 436 U.S. at 690–91. "A

plaintiff may satisfy the 'policy or custom' requirement by alleging one of the following: '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.'" *Johnson v. Paul*, 2018 WL 2305657, at *3 (S.D.N.Y. May 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

Plaintiff's *Monell* claim fails at the threshold. He does not allege a constitutional violation. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Moreover, Plaintiff's allegations concern "a single incident . . . involv[ing] only actors below the policy-making level" and thus "does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal citation omitted); *accord Staboleski*, 2021 WL 796616, at *5.

Plaintiff was previously given an opportunity to replead his Section 1983 claims, Dkt. No. 5 at 9, and "not even a liberal reading of the complaint gives any indication that a valid claim might be stated," *Teman v. Zeldes Needle Cooper, LLP*, 2025 WL 3778680, at *14 (Dec. 31, 2025). Plaintiff's Section 1983 claims are therefore dismissed with prejudice.[6]

[6] The AC brings Section 1983 claims against solely DOE. AC at 15–17. To the extent it could be read to bring such claims against Xu, Plaintiff's claims fail for both the failure to allege a constitutional violation and the failure to allege that Xu is a state actor. The AC provides no allegations to support an inference that Xu "is a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

**III. Supplemental Jurisdiction**

Plaintiff brings a claim of intentional infliction of emotional distress under New York law against Xu for her alleged role in DOE's decision to deny Plaintiff access to ES's educational records. Given the dismissal of Plaintiff's claims that arise under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's IIED claim. *See Shi Ming Chen v. Hunan Manor Enter., Inc.*, 2018 WL 1166626, at *9 n.4 (S.D.N.Y. Feb. 15, 2018) ("Having dismissed the only claims against Moving Defendants over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state and common law claims at this early stage in the litigation"); *Cantey v. Ctr. for Employment Opportunities*, 2026 WL 923844, at *12 (S.D.N.Y. Apr. 6, 2026).

**IV. Xu's Request for an Injunction**

Xu requests in her motion to dismiss that the Court enjoin Plaintiff from filing further complaints in the Southern District of New York without first obtaining permission from a judge in this District. Dkt. No. 68 at 13. Xu points to two prior lawsuits filed in the Eastern District of New York, *Sullivan v. Xu*, No. 10-cv-3626 (E.D.N.Y. filed Aug. 6, 2010) and *Sullivan v. Xu*, No. 14-cv-1499 (E.D.N.Y. filed Apr. 23, 2014), as well as one prior case originally filed in the Southern District of New York and later transferred to the Eastern District, *Sullivan v. Xu*, No. 24-cv-5946 (E.D.N.Y. filed July 30, 2024), as evidence that Plaintiff has abused the court system and will continue filing frivolous litigation. Dkt. No. 68 at 5–6, 13.

"If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (internal quotation marks and citation omitted). Factors that a court should consider "in restricting a litigant's future access to courts" include:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Newman v. Jewish Agency for Isr.*, 2017 WL 6628616, at *6 (S.D.N.Y. Dec. 28, 2017), *aff'd sub nom. Eliahu v. Jewish Agency for Isr.*, 919 F.3d 709 (2d Cir. 2019) (quoting *Safir*, 792 F.2d at 24).

An anti-suit injunction is not appropriate or necessary here. Plaintiff has filed one prior action in this district which raised distinct legal claims regarding the family court orders that terminated his visitation rights. *Sullivan v. Xu*, Case No. 24-cv-5946, Dkt. No. 1 (E.D.N.Y. filed July 30, 2024). Plaintiff did not raise any claims regarding access to education records in that action. *See id.* Plaintiff's prior suits in federal court were initiated a decade prior to this action and preceded the actions challenged here. There is insufficient evidence of frivolous, vexatious, or duplicative litigation here so as to justify impeding Plaintiff's access to federal court. *Cf. Safir*, 792 F.2d at 24 (affirming injunction where, over a period of twenty years, plaintiff repeatedly sought redress for the same conduct); *Malley v. N.Y.C. Bd. of Educ.*, 112 F.3d 69, 69 (2d Cir. 1997) (affirming injunction where plaintiff had filed five repetitive actions concerning his discharge as a teacher and had been twice warned that further lawsuits may result in sanctions).

## CONCLUSION

Defendants' motions to dismiss are GRANTED. Plaintiff's Amended Complaint is dismissed with prejudice to refiling. Plaintiff's claim for intentional infliction of emotional distress against Xu is dismissed without prejudice to refiling in state court. Plaintiff is advised that, under 28 U.S.C. § 1367(d), the period of limitations for such claim was tolled while the claim was pending in this Court and will be tolled for a period of 30 days thereafter (unless the applicable state law provides for a longer tolling period).

Xu's motion to enjoin Plaintiff from filing further lawsuits in this District absent leave from a judge of this District is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 61, 67, and 77, and to close this case.

SO ORDERED.

Dated: August 7, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge